IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. DAVID D. BOTTOMS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-607     Cheryl Blackburn, Judge**

---

**No. M2000-02080-CCA-R3-CD - Filed May 31, 2001**

---

The defendant pled guilty in Davidson County Criminal Court to one count of arson, a Class C felony, based on his setting fire to a rental house. According to a plea agreement with the State, he received a four-year sentence as a Range I, standard offender. A sentencing hearing was held to determine the manner of service of his sentence and the amount and manner of payment of any restitution. The trial court ordered that the defendant serve his entire sentence in confinement in the workhouse and that he pay $10,000 in restitution to the victim. In this appeal as of right, the defendant argues that the trial court erred in denying any alternative sentence and in ordering restitution in the amount of $10,000. Having reviewed the record on appeal, we affirm the judgment of the trial court as to the manner of service. As to restitution, we reverse and remand to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part,**
**Reversed and Remanded in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. DAVID H. WELLES, J., Not Participating.

Ross E. Alderman, District Public Defender; C. Dawn Deaner, Assistant District Public Defender (on appeal); and Jonathan F. Wing, Assistant District Public Defender (at trial) for the appellant, David D. Bottoms.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Grady A. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, David D. Bottoms, was indicted by a Davidson County Grand Jury on two counts of aggravated arson. On July 13, 2000, he pled guilty to one count of arson. According to his agreement with the State, he received a four-year sentence as a Range I, standard offender. A

sentencing hearing was held on August 18, 2000, for the sole purpose of determining the manner of service of the sentence and any issues regarding restitution. At the conclusion of that hearing, the trial court denied the defendant's request for alternative sentencing and ordered that he serve his sentence in confinement in the workhouse.[1] In addition, the trial court ordered the defendant to pay $10,000 in restitution to his landlord, John Jones, whose property was damaged by the criminal acts of the defendant. The trial court further refused to grant the defendant, who was employed at the time of the hearing, immediate work release eligibility. In this appeal as of right, the defendant presents two issues for our review:

> I. Whether the trial court erred in ordering the defendant to serve his sentence in continuous confinement rather than in some alternative manner of punishment; and

> II. Whether the trial court erred in ordering the defendant to pay $10,000 in restitution.

Having reviewed the entire record on appeal, we conclude that the trial court did not abuse its discretion in ordering that the defendant serve his four-year sentence in confinement. Further, we affirm the authority of the trial court to order restitution in this case but remand to the trial court for additional findings consistent with this opinion.

## FACTS

The central facts of this case are uncontroverted. The defendant, a twenty-six-year-old high school dropout, was living in a rented house at 527 Raymond Street in Nashville with his girlfriend, Ashley Newby, and their child.[2] The defendant, an abuser of alcohol since he was twelve or thirteen, had been sober for a period of some four years prior to New Year's Eve, December 31, 1999. At that point he began drinking again. On January 12, 2000, he was, according to his testimony, "wasted," having started drinking at 7:00 a.m. He had argued during the day with Ms. Newby, and when he got home, she was at the home of a male friend, Jerry Hill. The defendant testified that "I wanted her to come home and she wouldn't come home." The defendant apparently called Hill's home and said that he was "going to catch the house on fire and lay in the middle of it." His first attempt at starting a fire in the front on the house was put out by other individuals. The defendant's second

---

[1] According to notations on the judgment form, the word "workhouse" was crossed out and underneath it the letters "CCA" were written. Presumably, the trial court ordered the four years to be served in a workhouse facility operated by Corrections Corporation of America in Davidson County. The trial judge also ordered that the defendant participate in a program entitled "LifeLines."

[2] The landlord, John Jones, testified that he had rented the house to four individuals: the defendant, his girlfriend, Ashley Newby, and two small children. At the time of the incident on January 12, 2000, Ashley Newby was nine months pregnant with the second child fathered by the defendant. It is unclear from the record who the second child referred to by Jones actually was. The defendant spoke only of his "two children" with Ms. Newby, one who was two and one-half years old and one, born on the night of the incident, who was seven months old at the time of the sentencing hearing.

attempt, according to the testimony of James Watkins, an arson investigator with the Nashville Fire Department, involved the deliberate use of an accelerant.[3] This second attempt resulted in significant fire damage to the house. The defendant remembered running outside to call 911 and then going back into the house to collect personal items when he was overcome by smoke. He was subsequently treated for smoke inhalation.

Whether there was anyone else in the house at the time of the second fire is a controverted fact. The defendant testified that there was no one else in the house at the time of the second fire and that Ms. Newby was at Hill's home. Investigator Watkins testified that Ms. Newby said she was in the house at the time of the fire. No one, other than the defendant, sustained any injuries as a result of the fire.

John Jones testified that the defendant was "seriously delinquent" on his rent payments at the time of the fire. Rent on the house was $575 a month. Jones testified that he had at least eight houses that he owned and rented in the neighborhood and that he had no fire insurance on any of the houses. Jones testified that he had spent approximately $28,000 on repairs to the house and had not been able to rent it again for three months. He presented an estimate from Jack Crisp of Complete Repair and Service for $28,600. The single paid invoice produced as evidence by Jones was for $3448, although Jones stated that he had several other paid bills that he did not bring with him to court.

## ANALYSIS

### Issue I. Manner of Service of Sentence

The defendant argues first that the trial court erred in denying his request for alternative sentencing. When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-103

---

[3] Investigator Watkins testified that he arrived as the fire was being put out and was suspicious about the origin of the fire when he went inside and smelled what seemed to be gasoline on the carpet in the area where the second fire started. The carpet sample was sent to the Tennessee Bureau of Investigation where tests revealed the presence of an accelerant.

(1997) and -210 (Supp. 1999); <u>see also</u> <u>State v. Scott</u>, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The Tennessee Criminal Sentencing Reform Act of 1989, enacted to "promote justice," provides that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102 and -103(4) (1997). When the trial court determines the appropriate combination of sentencing alternatives to be imposed, it must consider the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
>
> (6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

<u>Id.</u> § 40-35-210(b)(1)-(6).

A defendant may be not only eligible for probation according to Tennessee Code Annotated Section 40-35-303(a),[4] but also presumptively a favorable candidate for sentencing options other than incarceration pursuant to Tennessee Code Annotated Section 40-35-102(5)-(6). To be presumptively considered a favorable candidate for options other than incarceration, a defendant must first *not* fall within the parameters of Section 40-35-102(5), that is a defendant must not be one of that class of "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation." <u>Id.</u> § 40-35-102(5). If a defendant is not a member of the class of defendants described in subdivision (5) as those for whom incarceration is a priority, the defendant must still meet the characteristics set out in subdivision (6). According to this subdivision, the defendant "who does not fall within the parameters of subdivision (5) and who is an especially mitigated or standard

---

[4]Our legislature has provided that a defendant "shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less." Tenn. Code Ann. § 40-35-303(a) (1997).

offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Id. § 40-35-102(6); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000) ("This statutory presumption of alternative sentencing is not conclusive, however, and the presumption may be rebutted by 'evidence to the contrary.'").

Guidance as to what may constitute evidence to the contrary, or evidence sufficient to rebut the presumption of favorable candidacy for alternative sentencing options, is set out in Tennessee Code Annotated Section 40-35-103. See, e.g., State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995); see also State v. James A. Howard, No. 03C01-9608-CC-00284, 1997 WL 81221, at *2 (Tenn. Crim. App. Feb. 24, 1997) ("When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103."). The considerations set out in that section are as follows:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). "[W]here the record adequately shows that one of these particular considerations outweighs a defendant's rehabilitative capabilities," confinement may be the appropriate sentence. State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). "In fact, the presence of sufficient evidence to bring these considerations into play, other than deterrence and offense seriousness, would usually mean that the presumption of rehabilitative capabilities would be rebutted." Id.

Here, the defendant received a sentence of four years according to a plea bargain agreement with the State. Having pled guilty to a Class C felony, the defendant met all the statutory requirements to invest him with a rebuttable presumption of favorable candidacy for alternative sentencing.[5]

The defendant argues first that the trial court misinterpreted the import of Tennessee Code Annotated 40-35-102(6) and failed to consider alternative sentencing in light of the statutory

---

[5]We note that the Petition to Enter Plea of Guilty indicates a plea to a D felony rather than a C felony. The trial court stated at the sentencing hearing that the offense was a C felony.

presumption that he is a favorable candidate, absent evidence to the contrary. The trial court stated, "It's a C felony. It is presumed eligible for probation. That is not an automatic thing. I just have to make sure I consider it." The trial court did distinguish between the "shall be eligible" as stated in Tennessee Code Annotated Section 40-35-303(a) and the "presumed" eligible of 40-35-102(6) when stating that this defendant was "presumed eligible." The trial court correctly stated Tennessee law by indicating that probation, even in the face of the statutory presumption, is not a certain outcome. "In other words, even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303 Sentencing Commission Cmts.

The defendant next asserts that, even if the trial court properly afforded the defendant the presumption of favorability, which we conclude the trial court did, the evidence presented was insufficient to rebut the presumption of favorability for alternative sentencing. In denying probation, the trial court relied on each of the three confinement factors of Tennessee Code Annotated Section 40-35-103(1) that can provide evidence to rebut the presumption of favorability. The defendant challenges each in turn.[6]

## A. History of Criminal Conduct

In relying on confinement factor (A) as evidence rebutting alternative sentencing and supporting incarceration, the trial court stated:

> And I can deny probation for several different reasons; one of which is confinement of someone who has a long history of criminal conduct. Well, I'm sorry, Mr. Wing. I disagree with you. I think he has a long history of criminal conduct. There are arrests in addition to those that are not arrests, because it says long history of criminal conduct. It doesn't say criminal convictions, but even in his own Pre-Sentence report, he has continued the use of illegal substances, has continued up until recently and up until today.

The defendant contends, first, that the trial court improperly considered five arrests that did not result in convictions. The most recent of the five arrests was on June 8, 1998. All five were dismissed or retired by the State. Our supreme court has stated that "[o]rdinarily mere arrests or indictments are not evidence of the commission of a prior crime. They are nothing more than charges or accusations made by the arresting or indicting authority upon such information as that authority had at the time." State v. Miller, 674 S.W.2d 279, 284 (Tenn. 1984) (citation omitted). This court, in analyzing the application of confinement factor (A), recently stated, "We must presume that if the State chose to dismiss the charges against the appellant it had a good reason to do so." State v. Jackie R. Ellis, No. 01C01-9804-CC-00177, 1999 WL 219599, at *3 (Tenn. Crim.

---

[6]We are aided in our analysis of this, and the defendant's other issue on appeal, by the lucid and thorough brief of the defendant.

App. Apr. 16, 1999). The State argues, on the other hand, that language in State v. Marshall, 870 S.W.2d 532 (Tenn. Crim. App. 1993), can be interpreted to mean that the trial court should not use evidence of arrests alone to enhance a sentence. See id. at 542 ("A trial court should not use evidence merely showing arrests, without more, to enhance a sentence.") (citing State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990) ("We agree with the appellant that the trial judge should not use mere arrest[s] in determining what sentence to impose."). The Newsome court noted that "the accused is furnished a copy of the pre-sentence report prior to sentencing and it will apprise him of those matters which are to be considered by the court at the sentencing hearing." 798 S.W.2d at 543.

Here, the trial court does not make any specific reference to the five arrests that resulted in dismissals. It appears that, in the text quoted above, the trial court simply was commenting on the broad meaning of criminal conduct, that is, that it encompasses more than arrests resulting in convictions but includes criminal behavior in a generic sense that "people of ordinary intelligence will understand." Id. Nevertheless, the defendant's presentence report showed more than five arrests alone. His record includes four misdemeanor convictions: evading arrest (12/31/94); DUI (2/15/95); shoplifting (5/16/95); and reckless driving (11/1/95). The defendant continued to break the law by using marijuana, even up until two weeks prior to his sentencing hearing.[7] In addition, the defendant admitted to deliberately lying to his presentence service officer concerning his continued use of marijuana. The presentence service officer is appointed by the commissioner of correction and serves with the permission of the trial court to, among other activities, "[d]evelop information about defendants relating to the selection of a defendant for particular correctional programs." Tenn. Code Ann. § 40-35-204(b)(2). By deliberately lying to an officer serving at the trial court's pleasure, the defendant thwarted the efforts of the trial court and showed a lack of respect for its authority.

The defendant relies on State v. Jackie R. Ellis, No. 01C01-9804-CC-00177, 1999 WL 219599 (Tenn. Crim. App. Apr. 16, 1999), and State v. Chester Lebron Bennett, No. 03C01-9810-CR-00346, 1999 WL 544653 (Tenn. Crim. App. July 28, 1999), as analogous cases where this court determined that the defendants did not have long histories of criminal conduct sufficient to support the application of confinement factor (A). The defendant in Ellis had two prior misdemeanor DUI convictions. Ellis, 1999 WL 219599, at *3. This court determined that, in that case, "two DUI convictions do not constitute a 'long history of criminal conduct' . . . ." Id. As to Bennett, this court noted in a footnote that "the appellant's three misdemeanor convictions for simple assault, two of which occurred over ten years ago, fall short of constituting 'a long history of criminal conduct' and, thus, do not weigh in favor of confinement." Bennett, 1999 WL 544653, at *2 n.3.[8] Nothing indicated that the defendants in Ellis or Bennett had continued to use illegal drugs up to the time of sentencing or that either had lied when giving information for his presentence report. We cannot say

---

[7]A drug screen test administered on the day of the sentencing hearing was positive for marijuana.

[8]On appeal, Bennett was remanded to this court for reconsideration of confinement factor (B) in light of State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). The opinion after remand from the supreme court did not deal with the issue of confinement factor (A). See State v. Chester Lebron Bennett, No. E2000-02735-CCA-R3CD, 2000 WL 1782763 (Tenn. Crim. App. Dec. 6, 2000).

that the trial court erred in concluding that confinement was necessary in this case to protect the public by restraining a defendant with a long history of criminal conduct.

### B. Seriousness of Offense and Deterrence

The defendant next contends that the trial court erred in finding a need for confinement based on either the seriousness of the offense or the need to deter others. The trial court stated the following:

> Confinement is necessary to avoid deprecating the seriousness of the offense, I think burning down somebody's property to the tune of $28,000.00 is a pretty serious offense and certainly needs to have some determent [sic] value for other individuals equally situated . . . .

When a trial court relies solely on confinement factor (B) in determining that confinement is the appropriate sentence, then "the circumstances of the offense 'as committed, must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring probation.'" State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (quoting State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985) (citation omitted)). Here, the trial court did not rely solely on confinement factor (B). Nevertheless, the trial court did not indicate how a sentence other than confinement would reflect only mild disapproval of his offense. Arson is a serious offense, but here the defendant called 911 to get help; no individual other than the defendant was physically harmed; and this was an isolated act motivated by an alcohol-induced death wish. The seriousness of the offense does not support confinement in the face of this defendant's presumptive status as a favorable candidate for alternative sentencing.

As to deterrence, our supreme court has outlined the considerations sufficient to deny probation on the sole ground of deterrence. See State v. Hooper, 29 S.W.3d 1, 3 (Tenn. 2000).[9] The five factors are:

> (1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
>
> (2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.

---

[9]This decision was released approximately one month after the sentencing hearing in this case.

(3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.

(4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.

(5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12.

Again, we note that the trial court did not rely *solely* on deterrence in denying alternative sentencing. Nevertheless, using the five factors determined by Hooper as guidance, we conclude that none of the factors, other than the fact that the defendant apparently did intentionally set the fire, apply. We conclude that confinement factor (B) is not applicable in this case.

### C. Measures Less Restrictive Than Confinement

The defendant contends that the record does not support the trial court's application of confinement factor (C). Instead, the defendant asserts that the evidence demonstrated that he has been successful when sentenced to less restrictive alternatives to incarceration and that nothing in the record suggests that any of his alternative sentences were ever revoked or modified because of a violation. The following exchange between the trial court and defense counsel took place:

MR. WING: Well, he has never violated probation.

THE COURT: Well, but he has been on probation.

MR. WING: Yes, Your Honor, for the DUI.

THE COURT: So the least restrictive alternatives have been applied in the past.

MR. WING: He was on probation in 1995, Your Honor.

THE COURT: Right, well, apparently without much success because he continued to, I mean, it says for driving, it was a DUI. He obviously had a drinking problem. He still has a drinking problem.

MR. WING: Your Honor, the uncontroverted testimony is that he didn't have anything to drink from after 1995 until January 1, of 2000. Twelve days later, this incident occurred.

The record shows that the defendant received a sentence of eleven months and twenty-nine days on February 15, 1995, for DUI occurring on December 31, 1994, that was "suspended to probation." Within the probationary period, the defendant committed two additional offenses which resulted in misdemeanor convictions. On May 1, 1995, the defendant was arrested for shoplifting and convicted on May 16, 1995. On August 26, 1995, the defendant was arrested again for DUI which was reduced to reckless driving. The trial court, therefore, appropriately concluded that applying measures less restrictive than confinement had not impressed this defendant.[10] Furthermore, it is clear from the above-quoted exchange that the trial court focused on the defendant's potential for rehabilitation. Although the defendant has shown that he is able to abstain from alcohol for periods of time, he is apparently not able to refrain from the illegal use of marijuana. The defendant's potential for rehabilitation was properly considered by the trial court, see Tenn. Code Ann. § 40-35-103(5), and that potential was found to be insufficient to merit full probation.

## D. Other Factors

The defendant contends that the trial court failed to consider certain factors that he asserts support his potential for rehabilitation and the appropriateness of alternative sentencing. The defendant points to his stable employment history; his present stable living situation with his grandmother; his voluntary support of his children; his remorse for his actions; and his acceptance of responsibility for his actions. Finally, the defendant argues that, in setting this fire, he was not motivated by any desire to violate the law, but acted rather out of emotional despair and intoxication.

The trial court noted that the defendant, like all citizens, was presumed to be responsible for providing for himself and his family. The trial court noted further the defendant's tendency to find "excuses" for his behavior. The trial court was not impressed by the defendant's explanation for his most recent use of marijuana, that he tried to resist but his fellow coworkers on a deck construction site just made it too easy to accept the drug. The trial court also noted that the defendant had made only minimal attempts at paying his court fees.

---

[10]Additionally, the defendant argues that the less restrictive measures applied to him in the past were neither "frequently" nor "recently" applied. Neither term need be subjected to any numerical formula. Here, the record shows that the defendant has received suspended sentences more than once and that his prior offenses all occurred during his early twenties. The offense in this case occurred when the defendant was twenty-five. We cannot say the trial court erred in considering the defendant's record as containing recent instances of failing to meet the requirements of suspended sentencing.

We conclude that the defendant has failed to meet his burden of showing that he is entitled to full probation. See Tenn. Code Ann. § 40-35-303(b); see also State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995).[11]

## Issue II. Restitution

Following the hearing in this matter, and testimony from both the victim and the defendant, the trial court concluded that restitution should be calculated from the $28,000 which the victim expended in repairs plus $1725 in lost rent while the house was being repaired. The judgment form contains the following language as "special conditions": "Victim had $28,000 in repairs to property which was not insured; lost approximately $1725 in rent for months house being repaired. Total restitution."

However, the trial court then concluded that, given the defendant's circumstances, he would not be able to pay this amount. Accordingly, the trial court orally ordered that the defendant pay $10,000 in restitution following his release from confinement.

The defendant has objected to the trial court's order regarding payment of restitution, arguing both that the proof was insufficient to show that the victim suffered an actual loss of $10,000 or that this amount, even if proven, was a reasonable restitution amount, given the defendant's economic circumstances. We will consider these claims.

"The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." State v. Johnson, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997) (citing State v. Larry Lee McKinney, No. 03C01-9309-CR-00307, 1994 WL 592042, at *4 (Tenn. Crim. App. Oct. 26, 1994)). Tennessee Code Annotated Section 40-35-304 sets out the procedures the trial court must follow in ordering restitution "as condition for probation." Effective July 1, 1996, restitution is available where a defendant has been sentenced pursuant to Section 40-35-104(c)(2) (authorizing restitution in addition to a sentence of continuous confinement in the jail or workhouse). See 1996 Tenn. Pub. Acts 699. We review the appropriateness of the restitution ordered in conjunction with a sentence of total confinement in the workhouse, as is the case here, according to the standards set out in Tennessee Code Annotated Section 40-35-304 and applicable case law. See

---

[11]The defendant alternatively submits that, even if we were to conclude that some period of confinement was appropriate in this case, the trial court erred in ordering full confinement in the workhouse instead of a term of confinement followed by a term of probation, or even periodic confinement in conjunction with probation. The trial court stated: "Now what that means, Mr. Bottoms, into custody today. You are going to the LifeLines program. If you successfully complete this, I will reconsider, but you need to make yourself learn how to make lifestyle changes, but into custody."

We note that the State recommended work release. The trial court may choose to so modify the defendant's sentence. Nevertheless, having concluded that the trial court has imposed a lawful sentence, "we may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Tenn. Code Ann. § 40-35-304(g) ("The procedure for a defendant sentenced to pay restitution pursuant to § 40-35-104(c)(2), or otherwise shall be the same as provided in this section . . .").

"Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." Tenn. Code Ann. § 40-35-304(b). The amount of restitution, therefore, is limited by statute to the victim's "pecuniary loss." Id. "Pecuniary loss" includes:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Id. § 40-35-304(e). The amount ordered to be paid "does not have to equal or mirror the victim's precise pecuniary loss. Moreover, the sum must be reasonable." State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Tennessee law further mandates that, "The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments." Tenn. Code Ann. § 40-35-304(c).

In addition, when a defendant has been ordered to pay restitution pursuant to Tennessee Code Annotated Section 40-35-104(c)(2), the following law applies:

> (2) A defendant sentenced in whole or in part to the payment of restitution pursuant to § 40-35-104(c)(2), or otherwise, shall be responsible for the payment of such restitution until the expiration of the sentence imposed by the court, and any payment or performance schedule established by the court shall not extend beyond such expiration date[.]

Tenn. Code Ann. § 40-35-304(g)(2).

First, we examine the pecuniary loss substantiated by the record. The presentence report contains the following single comment concerning restitution: "The victim, John S. Jones, Sr., stated that he has an estimate for $28,000.00 for repairs to his property." The victim testified at the sentencing hearing concerning his losses, stating that he had completed many of the repairs himself. Three items were submitted as evidence concerning the victim's pecuniary losses: (1) a photocopy of an estimate of $28,600 for repairs to the house at 527 Raymond Street, prepared by Jack Crisp, owner of Complete Repair and Service dated January 17, 2000; (2) a photocopy of an invoice in the amount of $3448, and showing a balance owed of $2648, for repairs completed by Jack Crisp on the

house at 527 Raymond Street; and (3) photocopies of nineteen photographs of the house at 527 Raymond Street taken by arson investigator James Watkins.[12]  Mr. Jones testified that although he had several other bills which he had paid for repairs and invoices for materials used, he did not bring these to the hearing.

We note that the State's proof appeared to be conflicting as to the degree to which the structure was damaged.  James Watkins, an arson investigator with the Nashville Fire Department, agreed that the damage was concentrated at the back of the house and that there was "basically minor" damage to the living room.  The victim testified that "[m]any would consider [the house] to be [a total loss]," but he repaired it.  When questioned by the trial court about the accuracy of the $28,000 figure, and whether it was "pretty much accurate" as to what he had to spend for repairs, the victim said that it was "relatively accurate."  The victim testified that he did much of the repair work himself.  He did not explain whether his efforts were in addition to the approximately $28,000 which he expended.

The trial court stated the following:

> Now with regard to restitution, Mr. Jones needs to have some restitution.  Now $28,000.00, I'll have to admit, is really sort of beyond his financial resources and future ability to pay, and I really am finding that the restitution in this case should be the $28,000.00, plus the $1,725.00, and I've written that on the judgment form; however, I just don't think that is reasonable under the circumstances, so I am going to order that the restitution that Mr. Bottoms needs to make is $10,000.00.  Now that is one of those things that he can do it - - I'm not going to give him work release right now because he needs to attend the LifeLines program.  If he ever does get work release, or when he is released on parole, there is a restitution in the amount of $10,000.00 that needs to be made, which means, Mr. Jones, you are not going to be getting your money anytime soon, and I'm sorry about that, but I think the realistic possibility is pretty slim.
>
> Now I think, General, if you would research about his ability to change the judgment into a civil, to have that, so that he can keep doing this, I think that would be helpful.

The trial court calculated lost rent for three months based on rent in the amount of $575 per month.  The victim did not recall exactly when he had been able to rent the damaged house but

---

[12]The original photographs were kept by the witness and only black and white photocopies were entered as evidence.  The quality of these nineteen photocopies is poor, and testimony at the hearing did not explain what was shown in each photograph.

agreed that "at least by the first of April, I'm sure it was occupied." As to the list of items included in the $3448 statement from Jack Crisp for work completed as of March 20, 2000, that is, just prior to a new renter's taking occupancy, it is unclear whether all of these repairs were done as a result of fire damage to the structure.[13]

In its determinations as to restitution, a trial court must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay. A victim seeking restitution must present sufficient evidence so the trial court can make a reasonable determination as to the amount of the victim's loss. We note that "[w]hile this Court agrees that the strict rules of damages are somewhat relaxed when determining the propriety and calculating the amount of restitution, the rules are not completely discarded. . . . This Court fears that if the burden of proof that is required in cases of restitution is allowed to drop far below that required in the civil courts of this State, then our criminal courts will become a haven for 'victims' who think their losses might not meet the level of proof necessary to recover in a civil case." State v. Larry Lee McKinney, No. 03C01-9309-CR-00307, 1994 WL 592042, at *3-4 (Tenn. Crim. App. Oct. 26, 1994).

In determining the amount and method of payment of restitution, the trial court must consider "the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d); see also State v. Johnson, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997) ("[T]he trial court, in determining restitution, must also consider what the appellant can reasonably pay. An order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim."); State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994) ("The trial court must further set an amount of restitution that the appellant can reasonably pay within the time that he will be within the jurisdiction of the trial court."). However, in this case, it would appear to be a difficult exercise for the trial court to establish a payment schedule, for it is unclear when the defendant will be released and what his future income will be. Given the fact that the defendant is a high school dropout, with episodic employment, who was declared indigent by the trial court, his job prospects upon release are not bright. However, since Tennessee Code Annotated Section 40-35-304(c) requires that a trial court, in ordering restitution, consider not only the amount of the victim's loss but also the amount which a defendant can reasonably pay, this consideration, although substantially affected by future events, must be made. We note that the period during which the defendant can be made to pay restitution extends only until the expiration of the sentence imposed by the trial court. Tenn. Code Ann. § 40-35-304(g)(2). The unpaid portion of the amount ordered to be paid through restitution can be converted to a civil judgment. See Tenn. Code Ann. § 40-35-304(h)(2).

Based upon our review of the testimony of the victim's fire loss, we conclude that the evidence presented was insufficient to establish that the victim's repair cost was $28,000, which the victim said was only "relatively accurate." Although the victim said that he had other invoices showing payments for repairs, he brought only one paid invoice to the hearing. A victim seeking restitution must present sufficient proof so that a trial court can determine with some reliability the

---

[13]We note items such as "Cleaned old wood out from under house;" "Run water lines under house for washer;" and "Run elect[ric] for washer and outside light."

amount of the loss. Because of the uncertainty as to the victim's loss, and the additional considerations in setting the total restitution amount, we cannot conclude that the defendant should be ordered to pay restitution in the amount of $10,000. Accordingly, we remand to the trial court for reconsideration as to the victim's total loss, as well as the court's order that the defendant pay the sum of $10,000 as restitution. This amount appears to be excessive, given the time frame within which payment must be made and the defendant's limited income. Since unpaid restitution can be reduced to a civil judgment, an order should be entered setting out the amount of restitution which is to be paid.

## CONCLUSION

We affirm the judgment of the trial court ordering the defendant to serve his negotiated sentence of four years, as a Range I, standard offender committing a Class C felony, in the workhouse. We remand for additional determinations concerning the amount of the victim's loss and the amount and method of payment of restitution.

_____
ALAN E. GLENN, JUDGE