# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 18, 2010 Session

## STATE OF TENNESSEE v. RAYMOND BRADLEY, JR.

### Appeal from the Criminal Court for Davidson County
### No. 2008-B-1786     Seth Norman, Judge

### No. M2009-02055-CCA-R3-CD - Filed July 21, 2010

The Defendant, Raymond Bradley, Jr., pleaded guilty to one count of facilitation of aggravated burglary, a Class D felony. See Tenn. Code Ann. § 39-11-403(b), -14-403(b). He was sentenced to four years to be served on probation. He was also ordered to pay a total of $15,500 in restitution at a rate of $323 per month. In this direct appeal, the Defendant contends that the trial court erred in setting the amount of restitution and in determining that he had the ability to pay the ordered monthly payments. After our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Mike J. Urquhart, Nashville, Tennessee, for the appellant, Raymond Bradley, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and J.W. Hupp, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

At the Defendant's August 3, 2009 guilty plea hearing, the State presented the following factual basis for the Defendant's plea:

If this matter had gone to trial, the State would have produced witnesses and evidence to show that on April 2, 2007, that a residence on Jackson Downs Boulevard was broken into. The residence of Marilyn Charles. Subsequent investigation revealed that the [D]efendant had pawned a couple of items that had been taken in the burglary. The [D]efendant was a friend of the owner's daughter. He had been in the residence before; however, there was [sic] no other links to him actually being in the residence besides the fact that he had stolen items from the residence.

As a part of his plea, the Defendant agreed that the trial court would set an amount of restitution after an evidentiary hearing.

Marilyn Charles testified for the State at the September 15, 2009 restitution hearing. She said that she kept most of the valuables the Defendant stole along with an appraisal of those items in a safe. Because the appraisal was also stolen, she was only able to guess at the value of the stolen items she had not personally bought. In addition to the two returned items, the Defendant had stolen a number of other items of jewelry, an ivory cigarette box, and a laptop computer. On cross-examination, she individually estimated the value of each of these unreturned items, leading, according to our calculations, to a combined estimate of between $19,874 and $20,874. The State estimated the items' combined value as being "[s]omewhere between $10,000 and $15,000" based on some earlier testimony by Ms. Charles. Ms. Charles testified that she had not insured the stolen items and had no homeowner's insurance.

The Defendant testified that he had been employed in "IS Engineering" but had been unable to work since November, 2008, due to gout. He lived with his mother. More recently, his condition had prevented him from employment in lawn care. He said he had applied for disability payments and food stamps but had not yet received either. He planned to pay restitution out of his disability payments. On cross-examination, the Defendant said that he had suffered from gout for twenty years, most severely "in the last year or two." He admitted that a gout "flare up" can be treated by a doctor, and that he had been arrested while he had gout "going back a number of years for various kinds of charges, assaults, drugs . . . ."

The Defendant argued that he did not have the ability to pay $15,000 in four years, and requested "a reasonable amount of payment" through his probationary period, the remainder to be converted to a civil judgment following that period. In its ruling, the trial court simply stated as follows: "Set the restitution at $15,500. It will be payable at the rate of $323 per month." The Defendant now appeals.

-2-

**Analysis**

When a defendant challenges the validity and amount of restitution, this Court must conduct a de novo review of both the amount of restitution ordered and the method by which it was determined. State v. Johnson, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997) (citing Tenn. Code Ann. § 40-35-401(d) (1990); State v. Frank Stewart, No. 01-C-019007CC00161, 1991 WL 8520, at *1 (Tenn. Crim. App., Nashville, Jan. 31, 1991)). The trial court is entitled to a presumption of correctness. Tenn. Code Ann. § 40-35-401(d).

A trial court, in conjunction with a probated sentence, may order a defendant to make restitution to the victims of the offense. See Tenn. Code Ann. § 40-35-304(a). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." Johnson, 968 S.W.2d at 885. The statue that governs restitution as a condition of probation provides, in pertinent part, as follows:

> (b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.

> (c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

> (d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.

> (e) For the purposes of this section, "pecuniary loss" means:

> > (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

> > (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Tenn. Code Ann. § 40-35-304(b)-(e).

Special damages are those which are "'the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence.'" State v. Lewis, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995) (quoting Black's Law Dictionary 392 (6th ed. 1990)). General damages are those which are "'the necessary and immediate consequence of the wrong.'" Id. (quoting Webster's New International Dictionary 664 (2d ed. 1957)). It is unnecessary for the sentencing court to determine restitution in accordance with the strict rules of damages applied in civil cases. Johnson, 968 S.W.2d at 887.

The sum of restitution ordered must be reasonable and does not have to equal the precise pecuniary loss. State v. Smith, 898 S .W.2d 742, 747 (Tenn. Crim. App. 1994). There is no set formula. Johnson, 968 S.W.2d at 886. The sentencing court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay. Tenn. Code Ann. § 40-35-304(d); State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). In ordering restitution, the trial court shall specify the amount of time and payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. Tenn. Code Ann. § 40-35-304(g)(2). If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution. Tenn. Code Ann. § 40-35-304(f). Further, any unpaid portion of the restitution may be converted to a civil judgment. Tenn. Code Ann. § 40-35-304(h)(1); Bottoms, 87 S.W.3d at 108.

## I. Amount of Restitution

In arguing against the amount of restitution on appeal, the Defendant correctly notes that Ms. Charles could only guess at the value of many of the stolen items. The Defendant also doubts the accuracy of Ms. Charles' estimates of the value of some items, including her $3,000 laptop computer and a pearl necklace the value of which she estimated by visiting a jewelry store and viewing similar pearls.

"[W]hile a victim's testimony standing alone may be sufficient to establish special damages for the purposes of restitution, the victim should explain how he or she arrived at the amount of damages requested." State v. Wendell Gary Gibson, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711, at *2 (Tenn. Crim. App., Nashville, Jun. 24, 2002). Ms. Charles did so. Although she originally valued the stolen items at between $10,000 and $15,000, her later itemized testimony established a combined value of between $19,874 and $20,874. We conclude that Ms. Charles adequately explained the source of her estimates. We also conclude that the Defendant has failed to overcome the presumption of

correctness to which the trial court is entitled: the total ordered restitution amount of $15,500 is sufficiently below Ms. Charles' itemized estimate total to account for any inaccuracy in some of her individual estimates. We conclude that the ordered restitution is a reasonable amount. See Smith, 898 S .W.2d at 747. This issue is without merit.

## II. Ability to Pay

The Defendant next contends that the trial court failed to consider his financial resources and future ability to pay. See Tenn. Code Ann. § 40-35-304(d). He bases this argument largely on a pair of exchanges at his restitution hearing. The first occurred during the State's cross-examination of the Defendant:

[The State]: [Defendant], tell me a little bit about your gout condition.

. . . .

[The Defendant]: [I've had it for] [a]bout 20 years, but it has gotten worse in the last year or two.

[The Court]: General, gout keeps you from working, but it don't keep you from breaking in and stealing. See you can break in and steal when you got gout, but you can't work, you see? You're disabled.

The second exchange occurred after the Defendant had testified regarding his gout condition and resulting inability to work:

[Defense Counsel]: Also, in addition the [c]ourt has to find that he has the specific ability to pay the restitution amount that is ordered. We are not saying that he can't pay restitution. I don't believe that he can pay the $15,000 in four years if that is what the [c]ourt orders.

We are asking for a reasonable amount of restitution, a reasonable amount of payment. And then after his probationary period is over, that amount can be converted over to a civil judgment pursuant to the statute.

[The Court]: You're telling me that you don't think much of the value of the property; is that what you're telling me, [Defense Counsel]?

[Defense Counsel]: I think there has to be more proof than just her statements.

[The Court]: If your stealing, thieving client would bring it back to her so she can take it in and get an appraisal on it, then she might be able to bring some proof into court. How is she supposed to bring proof into court on an appraisal when your client stole it all?

Although the record reflects a certain combative tone on the part of the trial court, we disagree with the Defendant that it reflects a failure to consider his financial resources and future ability to pay. The trial court allowed the Defendant to testify regarding his medical and disability status; the exchanges above reflect that the trial court simply found this testimony lacking in credibility, concluding, from the Defendant's apparent ability to commit burglary, that he was or would be able to find gainful employment sufficient to pay $323 per month in restitution. The Defendant has again failed to overcome the presumption of correctness to which the trial court is entitled. This issue is without merit.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE