IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2010

## STATE OF TENNESSEE v. DONNA HARVEY

**Appeal from the Circuit Court for Sevier County**
**No. 13202-II     Richard R. Vance, Judge**

**No. E2009-01945-CCA-R3-CD - Filed November 9, 2010**

The Defendant, Donna Harvey, and a codefendant pled guilty in the Sevier County Circuit Court to theft of at least $1,000 but less than $10,000, a Class D felony. See T.C.A. §§ 39-14-103, -105(3) (2006). The Defendant received a four-year sentence as a Range II, multiple offender, suspended to time served with the balance on supervised probation. The trial court ordered the Defendant and codefendant to pay $64,852 in restitution with joint and several liability. At issue in this appeal is the amount of restitution for damages caused by the crime. We reverse the order setting the restitution amount and remand for a restitution hearing, at which the trial court shall consider the Defendant's financial resources and ability to pay and determine the proper amount and schedule of restitution.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. JAMES CURWOOD WITT, JR., J., filed a dissenting opinion.

James R. Hickman, Jr., Sevierville, Tennessee, for the appellant, Donna Harvey.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James Dunn, District Attorney General; and Emily Abbott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The theft occurred while the Defendant was employed as a store manager for Gatlinburg Designer Sunglasses ("Gatlinburg Sunglasses"), which is owned by the victim, Scott Erkelens. The Defendant was indicted for theft of $10,000 or more, and she pled guilty

to theft of $1,000 or more but less than $10,000. Pursuant to the Defendant's plea agreement, the trial court determined the amount of restitution.

At the restitution hearing, the victim testified that he operated a series of retail sunglass stores and hired the Defendant in 2006 to manage Gatlinburg Sunglasses. The victim testified that the Defendant introduced him to the codefendant, Henry Nelms, who was the Defendant's boyfriend. He stated that Mr. Nelms began working part-time for him a few months later and that when he opened a second store in Gatlinburg, he hired Mr. Nelms to work there.

The victim testified that he ordered sunglasses through a wholesale supplier, Pacific Link. He said that store managers, including the Defendant, tallied sales and conducted weekly inventories. He stated that he used the inventories to determine how many pairs of sunglasses were needed in each store and that he was the only person authorized to order sunglasses from the supplier.

The victim testified that he first realized there was a problem with the Gatlinburg store when the mall manager's wife called to say that the Defendant was stealing. The victim said that he called the supplier, who confirmed that the Defendant had been buying sunglasses at wholesale cost. The victim stated that the Defendant was selling the sunglasses she ordered wholesale at retail price, keeping the profit, and then restocking enough inventory to make the accounts appear correct.

The victim testified that he worked with Gatlinburg Police Detective Gary McCarter to investigate the theft. The victim said that on the day of the Defendant's arrest, March 2, 2008, he and Detective McCarter went to Gatlinburg Sunglasses without notifying the Defendant or codefendant. The victim stated that according to the inventory, the store should have been stocked with 1,100 or 1,200 pairs of sunglasses, but there were only 200 pairs, leaving at least 900 pairs missing. He said that Gatlinburg Sunglasses had a "running bank" every day of $100 or $150, but on that day the register had no money.

The State introduced invoices, inventory sheets, and money orders submitted by Pacific Link, the supplier, pursuant to a subpoena. The victim testified that the money orders showed the Defendant's wholesale purchases, which were signed by the Defendant and made in the name of Gatlinburg Sunglasses. The victim said that the records showed that $14,150.97 worth of sunglasses were purchased from March 1, 2006, through March 31, 2008. He said that the wholesale price was $2.00 a pair and that the purchase amount divided by two equaled the number of pairs of sunglasses that the Defendant purchased, for a total of 7,075 pairs. The victim stated that his stores sold the sunglasses for $10.00 a pair, which

equaled a profit of $8.00 each. He estimated about $56,000 in lost profit from the 7,075 pairs.

The victim testified that he used Pacific Link's ledgers and inventory sheets to estimate how much his business lost due to the Defendant and the codefendant's theft. He stated that the Defendant and codefendant purchased 6,108 pairs of sunglasses in 2007 and 720 pairs in 2008 without his authorization. The victim said that in 2007, the cost of the glasses was $11,916.80 and the retail sales were $61,080.00, equaling a total theft of $49,888.32. He said that in 2008, the cost of the glasses was $1,494.77 and the retail sales were $7,200.00, equaling a total theft of $5,705.23. He stated that the total value of the store inventory and cash register money missing on the day he confronted the Defendant was $9,265.00.

The victim testified that by adding the thefts from 2007 and 2008 to the missing inventory and money, he calculated the total loss at $64,852.55. He said that this was a low estimate because the wholesale cost of some of the sunglasses was $1.60 or $1.80, which make the lost profit on those glasses more than $8.00. The victim stated that he evened the profit figure to $8.00 each for all sunglasses in his estimate.

The victim testified that it was not until he received a tip that he realized what was happening because the inventory paperwork balanced each time he checked it and because he called in advance when he visited the store. He said the store was not earning the profit he expected but was earning enough to maintain it as a worthwhile business.

On cross-examination, the victim testified that the store where he and Detective McCarter confronted the Defendant was called "Gatlinburg Designer Sunglasses" and that he had already closed the second store in Gatlinburg, which had been open only a couple of months. The victim said that the parent company was Shark Shack Sunglasses, Inc. and that Gatlinburg Sunglasses also did business as Shark Shack, Inc. He said that when he ordered wholesale sunglasses from the supplier, the invoices were under Shark Shack's name. He agreed that the invoices signed by the Defendant were under the name of Gatlinburg Sunglasses instead of Shark Shack. The victim said that he had an oral non-compete clause with a couple of his managers, but he was not sure if he had one with the Defendant or if he told her that she was not allowed to contact the supplier.

The victim testified that he did not have insurance for employee theft and that he did not anticipate receiving any money from his insurance company to offset the loss. He said that he paid his employees in cash and kept track with a weekly payroll account. He did not remember giving the Defendant and codefendant their final payments.

The trial court found that the sunglasses ordered by the Defendant and codefendant were sold through the victim's store and that there was proof of merchandise that bypassed the parent company and benefitted only the Defendant and codefendant. The court found that the victim's loss due to the theft was $64,852 and that the Defendant and codefendant would be jointly and severally liable for the full amount.

The trial court asked for proof on the Defendant's and codefendant's ability to pay. Neither the Defendant nor the codefendant testified. Defense counsel stated that the Defendant provided proof to the State, showing that she suffered from a seizure disorder, multiple sclerosis, Hepatitis C, ankle problems, and back problems. The appellate record does not include proof of this medical history. Defense counsel said that the Defendant applied for disability benefits but had not received it and that she was not working. The prosecutor responded that the Defendant had worked at the victim's store until the previous year while experiencing many of the medical problems described by defense counsel.

The trial court ordered the Defendant and the codefendant to make monthly payments on the restitution amount of $64,852 and to make all payments before the end of the probation period. However, the trial court did not set a payment schedule or a monthly payment amount. The court stated that because it did not have enough information about assets to set a fair monthly amount, it was ordering the probation officer to interview the Defendant and codefendant and set a monthly payment schedule. This appeal followed.

The Defendant contends that the trial court erred in calculating the restitution amount because the court considered speculative lost profits and because the court ordered the probation officer to determine the Defendant's ability to pay. The State argues that the record supports the victim's loss of $64,852 but agrees that the trial court erred by not determining the Defendant's ability to pay before ordering the restitution amount. Except for two mathematical errors totaling $719 in the victim's loss estimate accepted by the trial court, we agree that the record supports the trial court's calculation of the victim's loss. We also agree, though, that the court erred in not determining the Defendant's ability to pay.

Restitution may be ordered as a component of sentencing pursuant to Tennessee Code Annotated sections 40-35-104(c)(2) (2006) and 40-35-304 (2006). Restitution is allowed for "the victim's pecuniary loss," consisting of special damages and out-of-pocket expenses incurred by the victim relative to investigation and prosecution of the crime. T.C.A. § 40-35-304(e). Special damages are "the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence . . . ." State v. Lewis, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995) (quoting Black's Law Dictionary 392 (6th ed. 1990)). The victim must present sufficient evidence for the trial

court to make a reasonable determination of the amount of the victim's loss. State v. Bottoms, 87 S.W.3d 95, 108-09 (Tenn. Crim. App. 2001).

In determining a proper amount and method of payment of restitution, "the court shall consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304(d). In its determination of the restitution amount, the trial court "must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay." Bottoms, 87 S.W.3d at 108. On appeal, review of an award of restitution is subject to de novo review accompanied by a presumption that the trial court's determination was correct. T.C.A. § 40-35-401(d) (2006); State v. Johnson, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997).

Regarding the amount of the victim's loss, the Defendant admitted purchasing sunglasses from the victim's supplier, selling those sunglasses through the victim's store, and keeping the profits. The victim testified that the Defendant ordered from the supplier using the store name but that when the victim ordered from the supplier, he used the parent company name. The victim testified that he used the supplier's documentation to calculate the total number of sunglasses purchased by the Defendant under the name Gatlinburg Sunglasses.

The Defendant argues that the victim's estimated losses are based on an assumption that the Defendant sold all the sunglasses she ordered from the supplier through the Defendant's store and that this assumption involved undue speculation regarding the victim's lost profits. The Defendant relies on a case in which this court concluded that an increase in the victim's insurance premiums was not sufficiently established as attributable to the defendant's theft. See State v. Jesse Lee Creasman, No. E2004-00800-CCA-R3-CD, Hamilton County, slip op. at 5 (Tenn. Crim. App. Apr. 25, 2005). In Creasman, the victim acknowledged that an increase in criminal behavior at his store's location, not the defendant's burglary alone, caused his insurance company to raise premiums. Id., slip op. at 2. The present case is distinguishable because the trial court found that "the only conclusion that anybody in the world could draw is that those sunglasses were sold through that store" and that it was not speculation to determine that the profit earned would have been the victim's profit if not for the Defendant's crime.

As we noted, the victim's estimate of his 2007 losses contained two mathematical errors. The victim subtracted the cost of the sunglasses at $11,916.80 from retail sales of $61,080.00 and arrived at a total theft for 2007 of $49,888.32. However, the total is actually $49,163.20, or $725.12 less than the victim's estimate for his 2007 losses. Also, when the victim added the three figures for his total losses, he arrived at a total of $64,852.55, but the total is $64,858.55. The total without mathematical errors is $64,133.88. The victim

testified that the estimate of his losses was low. We conclude that the evidence justifies a finding that the victim's loss was $64,133.88.

We also conclude that the trial court did not make the requisite inquiries into the Defendant's financial resources and future ability to pay. <u>See</u> T.C.A. § 40-35-304(d); <u>Johnson</u>, 968 S.W.2d at 885, 887 (reversing the trial court's restitution order in part because the court failed to consider the defendant's financial resources and future ability to pay). Consideration of the Defendant's ability to pay is a judicial duty that the trial judge cannot delegate to another.

The Defendant argues that if the trial court had properly considered her ability to pay, it would have determined that it was unrealistic to expect her to pay even half of the restitution amount in the time remaining in her sentence. The State responds that on remand, the trial court would be authorized to extend the Defendant's performance schedule to the statutory maximum term of probation supervision. These are matters for the trial court to consider upon remand.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed. The case is remanded to the trial court for a new hearing, at which the trial court shall consider the Defendant's financial resources and ability to pay and determine the proper amount and schedule of restitution.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE