IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2003

## STATE OF TENNESSEE v. KRISTINA DAWN CATRON

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S45,731     R. Jerry Beck, Judge**

**No. E2002-01390-CCA-R3-CD**
**April 11, 2003**

The defendant, Kristina Dawn Catron, pleaded guilty to one count of fabricating evidence, one count of making a false report, and one count of misdemeanor theft under $500. The negotiated plea agreement produced an effective sentence of three years. The manner of service of the sentence was to be determined by the trial court. Following a presentence investigation and a sentence hearing, the trial court ordered the defendant to serve the sentence in confinement. It is from this sentencing determination that the defendant appeals. We affirm the judgment of the trial court based on the need to avoid depreciating the seriousness of the offense.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Stephen M. Wallace, District Public Defender; and Joseph H. Harrison, Assistant District Public Defender, for the Appellant, Kristina Dawn Catron.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and B. Todd Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In this appeal, we visit a corner of the law that assigns priority to an incarcerative sentence based on the "nature and circumstances" of the offense and the need for "deterrence."

At the time of sentencing, the defendant in this case was a single, 25-year-old female living with her parents. On April 28, 2001, the defendant was working at Subway in the Fort Henry Mall in Kingsport. She concocted a ruse and called the 911 emergency service to report an armed robbery at her workplace. When the police investigated the report, the defendant provided a

description of the phantom assailant and advised that the armed assailant had absconded with less than $500.

When the defendant was re-interviewed two days later, she identified Scott Miller as the robber and picked him out of a photo lineup. The defendant claimed that she had not provided Miller's name earlier because Miller and her former boyfriend, Terrell Johnson, were friends and because she feared reprisal from Johnson. The police arrested Miller, and although the Subway robbery charges against him were dismissed, he was transported to another state because of other pending charges.

During a third interview with the police, the defendant then confessed that she had fabricated the robbery incident and Miller's involvement. At sentencing, the defendant maintained that at the time she confessed, she was unaware that someone had been arrested on the basis of the information that she had provided. The defendant admitted that money had been taken from Subway, but she insisted that her involvement was occasioned by threats of physical harm from Johnson, who showed up at Subway demanding money to leave the area. The defendant testified that because she was afraid of Johnson, she gave him the money and made up a story to cover for him.

The defendant's actions resulted in her prosecution for fabricating evidence, *see* Tenn. Code Ann. § 39-16-503 (1997) (Class C felony), making a false report, *see id.* § 39-16-502 (Supp. 2002) (amended in 2002 to raise felony classification from Class E to Class C), and theft under $500, *see id.* §§ 39-14-103, -105 (1997) (Class A misdemeanor). By agreement with the state, the defendant entered guilty pleas to the charged offenses in exchange for an effective sentence of three years, which represented concurrent service of three years, one year, and 11 months twenty-nine days for the respective offenses. The manner of service of the effective sentence was reserved for the trial court's determination.

The facts, as recited above, have been taken from the transcripts of the defendant's plea submission and sentencing hearings and from the presentence investigation report that are included in the appellate record. As for prior criminal history, according to the presentence report, the defendant was fined $10 for failing to have her driver's license in her possession in 2001, and when she was nineteen years old, she was arrested for misdemeanor theft from Wal-Mart, was granted some form of diversion, and had the records expunged. The defendant is a high school graduate and does not use non-prescription drugs or alcohol. She has never been married and has no children. She has a steady employment history, and the presentence report quotes the defendant's then-current employer as stating that she is a "very good worker . . . she shows up on time and gets her job done."

The trial court acknowledged that the defendant had "no serious record." The trial court, nevertheless, denied any form of alternative sentencing based on the nature and circumstances of the offense and on the need for deterrence. The court appeared especially perturbed that the defendant had caused another person to be falsely arrested and detained.

Imagine someone being placed in prison on that type of proof. And also, . . . she claimed this person [who] robbed her had a weapon. And it could have resulted in a confrontation between the police where an innocent man may have been killed or, if the police had overreacted, or perhaps reacted to the circumstances they were confronted with.

Regarding the need for deterrence, the trial court commented that the "greatest nightmare" of any judge, defense attorney, or prosecuting attorney should be the potential "of convicting an innocent man of a crime." The court then extrapolated from its experience in divorce cases and seeing "the sexual offender card being played a little bit too much." Finally, the court disclaimed making a *per se* rule that a false accusation would result in rejection of alternative sentencing. "[T]his is not an unusual crime," the court stated. "[W]e've seen several of them, but we haven't had any in my memory where they go to the extent of actually picking a person out and subject that particular person to arrest by identifying them out of a lineup. That's cruel."

Our review of the record convinces us that the trial court properly denied alternative sentencing to avoid depreciating the seriousness of the offense. As we shall explain, on that basis, we affirm the trial court's sentencing determination.

The inner workings of Tennessee's sentencing scheme are not mysterious. At the conclusion of the sentencing hearing, the trial court determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5) (1997 & Supp. 2002); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who is an "especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1977). Nevertheless, a defendant who commits "the most severe offenses, possesses a criminal history evincing a clear disregard for the laws and morals of society, and [has failed] past efforts at rehabilitation" does not enjoy the presumption. *See id.* § 40-35-102(5), (6) (1997); *see State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). A sentence involving confinement is appropriate when

> (A)　　Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997). Moreover, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. *Id*. § 40-35-103(5) (1997). Sentencing issues are to be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

When, as in this case, the length, range, or manner of service of a sentence is disputed, this court undertakes a *de novo* examination of the record with a presumption that the determinations reached by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). The presumption, however, is predicated "upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id*. Should the record fail to reflect the required consideration by the trial court, review of the sentence is purely *de novo*. *Id*. On the other hand, should the record show that the trial court properly took into account all pertinent factors and that its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

From the record in this case and the trial court's comments, it is obvious that this defendant does not have a "long history of criminal conduct" such that confinement is necessary to protect society. *See* Tenn. Code Ann. § 40-35-103(1)(A) (1997). It logically follows that "measures less restrictive than confinement" have not "frequently or recently been applied unsuccessfully" to this defendant. *See id.* § 40-35-103(1)(C) (1997). The sentencing battlefield in this case is the territory occupied by deterrence and offense seriousness. *See id.* § 40-35-103(1)(B) (1997) (confinement necessary to avoid depreciating seriousness of offense or especially suited to provide effective deterrence to others).

Turning first to the expressed deterrence rationale for an incarcerative sentence, we note that the trial court is afforded "considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need." *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). In fact,

> [W]e will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1)

a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Id.*

In *Hooper*, our supreme court said that, in determining a need for deterrence and whether incarceration is particularly suited to deterrence, a trial court should consider factors such as whether (1) other incidents of the crime are increasing in the community, jurisdiction or state; (2) the defendant's crime was intentional, knowing or reckless; (3) the defendant's crime and conviction received unusual publicity; (4) the defendant acted as a member of a criminal enterprise; and (5) the defendant has previously engaged in similar criminal conduct. *Id.* at 10-12.

In our opinion, the trial court's reliance on deterrence to impose a sentence of confinement is not supported by the record. Admittedly, factors (1) and (2) weigh in favor of deterrence-based incarceration. The defendant's crime was clearly intentional, and taking the trial court's comments at face value, false accusations of sexual abuse in the domestic context are on the rise. The remaining three factors, however, weigh against incarceration predicated on deterrence. There is no evidence in the record that unusual publicity attended the defendant's arrest and conviction. Membership in a criminal enterprise is not an issue, and the defendant's meager history of lawlessness does not encompass or suggest criminal conduct similar to the instant offenses. *See State v. Bottoms*, 87 S.W.3d 95, 104 (Tenn. Crim. App. 2001) (only *Hooper* factor satisfied was that defendant intentionally set the fire; confinement based on deterrence inappropriate).

We now examine the seriousness of the offense as a rationale for denying alternative sentencing. When, as in this case, the presumption of favorably candidacy for alternative sentencing applies and Code section 40-35-103(1)(B) is invoked as the sole basis for rebutting the presumption, a trial court decision to impose total confinement must be predicated upon a finding that the nature and circumstances of the offense are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all favorable factors. *Fields*, 40 S.W.3d at 441; *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997); *State v. Hartley*, 818 S.W.2d 370, 375 (Tenn. Crim. App.1991). The trial court, in our opinion, carefully identified the requisite aggravating facts and circumstances, and we will not disturb that determination on appeal.

The trial court emphasized that the defendant did not simply make a false report. She "positively identified" an alleged perpetrator, thereby causing that person to be arrested. She also claimed that the person who robbed her had a weapon. She reported a Class B felony offense of aggravated robbery. *See* Tenn. Code Ann. § 39-13-402(a)(1) (1997). The sentencing range for a standard offender on this offense is eight to twelve years. *See id.* § 40-35-112(a)(2) (1997). An offender is statutorily ineligible for probation. *See id.* § 40-35-303(a) (Supp. 2002). "Imagine," the trial court stated, "someone being placed in prison on that type of proof."

Moreover, it was unnecessary for the defendant to identify anyone to cover up for her former boyfriend. As the trial court pointed out, the defendant easily could have provided some vague description of "a mysterious stranger." Furthermore, the identification was not some spontaneous remark made at the time of the initial police investigation. Even if her initial report was prompted by fear of a former boyfriend, the defendant waited approximately two days before she provided Miller's name; in other words, she certainly had time to reconsider or contemplate the implications of branding an innocent citizen as an armed robber. She acted anyway, and she even went so far as to pick out Miller in a photographic lineup assembled by the police. The trial court cannot be faulted for judging her conduct to be "shocking," "reprehensible," or "offensive." Her knowingly false accusation is a burden to the limited resources of law enforcement. It is offensive to the entire system of justice, and it is an affront to the responsible men and women who strive to maintain the integrity of the system.

Code section 40-35-103(B) speaks of the seriousness of the offense and of an effective deterrence in the disjunctive. *See* Tenn. Code Ann. § 40-35-103(B) (1997). We, therefore, affirm the trial court's imposition of an incarcerative sentence based solely on the need to avoid depreciating the seriousness of the offense.

The judgment below is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE