IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 25, 2005

## STATE OF TENNESSEE v. JESSE LEE CREASMAN

**Appeal from the Criminal Court for Hamilton County**
**No. 244869     Douglas A. Meyer, Judge**

**No. E2004-00800-CCA-R3-CD - Filed April 25, 2005**

The defendant, Jesse Lee Creasman, entered a plea of guilt to burglary of a business. Pursuant to a plea agreement, the trial court imposed a Range I sentence of two years and ordered probationary supervision for a period of four years. After an evidentiary hearing, the trial court directed restitution as follows: $207.05 for the replacement of the store window, $239.90 for stolen cigarettes, and $6,300 for increased insurance premiums. In this appeal of right, the defendant argues that the amount of restitution is excessive. Restitution is reduced by $6,300 to $436.95. Otherwise, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Ardena J. Garth, District Public Defender; and Donna Robinson Miller (on appeal) and Danny Hill (at trial), Assistant District Public Defenders, for the appellant, Jesse Lee Creasman.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; and Rodney C. Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 8, 2002, the defendant and, apparently, Christopher Adam Barnes, who was listed as a co-defendant in the indictment but is not otherwise identified in the record, broke into the Soddy (Daisy) Food King, a grocery store owned by the victim, Bill Dalton. The record demonstrates that the break-in was investigated by the Soddy Daisy Police Department and that the defendant confessed to the crime. As a part of the plea agreement, the state dismissed two charges of theft under $500 even though the defendant admitted his involvement in the other crimes. At the restitution hearing, it was stipulated that the value of the window broken during the burglary was

$207.05. The value of the cigarettes taken during the theft was $239.90. There was no dispute as to the value of the cigarettes or the amount of the damage to the property.

The victim testified that at the time of the break-in, he had insurance coverage on his business and that the annual premium in 2002 was $4,300. He confirmed that the only break-in that he had during the entire year was that committed by the defendant although he had experienced a break-in and an armed robbery at the same location in recent, prior years. Upon questioning, the victim testified that neither of the prior events had caused his annual premium to go up significantly but that in 2003, he was unable to secure a bid from the same company and that the lowest price he received from any other insurance carrier was $10,600, a difference in one year premium of $6,300. When the victim asked for an explanation as to the amount of the increase, the "insurance lady . . . said it was basically an industry thing . . . [and] there's so many break-ins right now going on that companies no longer wish to insure businesses like mine." Upon cross-examination, the victim acknowledged that the increase in his annual premium was because of "all the break-ins" and that criminal behavior, in general, had caused his competitor's insurance premiums to go up as well.

The defendant, who was unemployed at the time of the restitution hearing, had last worked at a Krystal Restaurant from October 14, 2003, until January 4, 2004, almost two months before the hearing. He stated that he was $240 behind in rent and was looking for a job, having made 21 or 22 applications since leaving Krystal. Although 21 years of age at the time of the hearing, the defendant had never applied for a driver's license and had no means of transportation. The defendant did say, however, that he had a job offer with Ford Motor Company if he was able to acquire his driver's license.

At the conclusion of the hearing, the trial court ordered restitution in the amount requested by the state. As indicated, the single issue presented for review is whether the trial court erred by ordering restitution in the amount of $6,300 for the increase in the annual insurance premium incurred by the victim after the break-in at the Soddy Food King.

When a defendant challenges the validity and amount of restitution, this court must conduct a de novo review of both the amount of restitution ordered and the method by which it was determined. The trial court is entitled to a presumption of correctness. Tenn. Code Ann. § 40-35-401(d); State v. Johnson, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997).

The statute which governs restitution as a condition of probation provides in pertinent part as follows:

(a) A sentencing court may direct a defendant to make restitution to the victim of the offense as a condition of probation.

(b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the

presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.

(c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment of performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

(d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.

(e) For the purpose of this section, "pecuniary loss" means:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

(f) A defendant, victim or district attorney general at any time may petition the sentencing court to adjust or otherwise waive payment or performance of any ordered restitution or any unpaid or unperformed portion thereof. The court shall schedule a hearing and give the victim and the defendant notice of the hearing, including the date, place and time and inform the victim and defendant that each will have an opportunity to be heard. If the court finds that the circumstances upon which it based the imposition or amount and method of payment or other restitution ordered no longer exist or that it otherwise would be unjust to require payment or other restitution as imposed, the court may adjust or waive payment of the unpaid portion thereof or other restitution or modify the time or method of making restitution. The court may extend the restitution schedule, but not beyond the term of probation supervision.

Tenn. Code Ann. § 40-35-304(a) - (f).

In matters of statutory construction, the role of this court is to ascertain and give effect to the intent of the legislature. State v. Williams, 623 S.W.2d 121, 124 (Tenn. Crim. App. 1981). Unless ambiguity requires resort elsewhere to ascertain legislative intent, judicial interpretation of a statute is restricted to the natural and ordinary meaning of the language used. Roddy Mfg. Co. v. Olsen, 661 S.W.2d 868, 871 (Tenn. 1983). Legislative enactments must be interpreted in their "natural and

ordinary sense without a forced construction to either limit or expand their meaning." State v. Thomas, 635 S.W.2d 114, 116 (Tenn. 1982).  Courts must construe statutes as a whole and in conjunction with their surrounding parts and their interpretation should be consistent with their legislative purposes.  State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995).  The meaning of a statute is to be determined not from a specific word in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretation should express the intent and purpose of the legislation.  National Gas Distrib., Inc. v. State, 804 S.W.2d 66, 67 (Tenn. 1991); Loftin v. Langsdon, 813 S.W.2d 475, 478-79 (Tenn. Ct. App. 1991).  "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being [aids] to that end." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998).

Special damages are those which are "'the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence.'" State v. Lewis, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995) (quoting Black's Law Dictionary 392 (6th ed. 1990)). General damages are those which are "'the necessary and immediate consequence of the wrong.'" Id.  (quoting Webster's New International Dictionary 664 (2d ed. 1957)).  It is unnecessary for the sentencing court to determine restitution in accordance with the strict rules of damages applied in civil cases.  Johnson 968 S.W.2d at 887.

The sum of restitution ordered must be reasonable and does not have to equal the precise pecuniary loss.  State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994).  There is no set formula.  Johnson, 968 S.W.2d 886.  The sentencing court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay.  Tenn. Code Ann. § 40-35-304(d); State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001).  In ordering restitution, the trial court shall specify the amount of time and payment and may permit payment or performance of restitution in installments.  Tenn. Code Ann. § 40-35-304(c).  The court may not, however, establish a payment or schedule extending beyond the maximum statutory term of probation supervision it could have been imposed for the offense.  Id.  If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution.  Id. at (f).  Further, any unpaid portion of the restitution may be converted to a civil judgment.  Id. at (h)(1); Bottoms, 87 S.W.3d at 108.

In this case, the trial court did not address, at least on the record, the financial resources of the defendant or his future ability to pay as directed by the statute.  Further, under the statute, the victim is entitled only to special damages.  That is, those that are actually a result of the crime and those which follow as "a natural and proximate" consequence thereof.  In our view, the proof presented at the restitution hearing was too speculative to support the $6,300 award which was the difference in the insurance premium offered by one company in 2002 and another in 2003.  There was no proof as to the deductible on each.  The victim was not asked to compare the extent of the coverage offered by the 2002 policy versus the 2003 policy.  No expert testimony was offered.  The trial court did not explain why restitution to the victim, who sought a significantly greater amount, was limited to one year in premium differential.  There was no attempt to apportion the increases in

insurance costs based upon historical losses involving the other crimes against the victim or the other crimes against similar businesses within the area.

Although the trial court was understandably unsympathetic with the defendant, the victim had been the unfortunate subject of other crimes in prior years. According to the agent who had secured his insurance coverage prior to this burglary, the original insurance carrier was no longer interested in offering coverage in general due to "changes," which this court interprets as overall losses, in the industry. The decision not to offer the coverage, according to the victim, was not attributed specifically to the break-in by the defendant. There was no proof by the victim that he had made a claim as a result of the burglary, there was no proof that he had received any payment through his insurance coverage by virtue of this loss, and there was nothing to establish the causal connection between the burglary and the failure of the specific carrier in question to offer insurance in the following year. The victim conceded that criminal behavior in general had affected the insurability of all businesses like his. While there may be an occasion that the proof could actually rise to the level necessary to establish an increase in insurance premiums as a special damage, the record is not adequate here.

Because the increase in premium has not been sufficiently established by the proof as a "natural and proximate" result of this particular crime, the judgment is modified to reduce the amount of restitution by $6,300 to $436.95. Otherwise, the judgment is affirmed. Costs are judged against the state.

_____
GARY R. WADE, PRESIDING JUDGE