IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 20, 2006

## STATE OF TENNESSEE v. KENNETH WORKMAN

**Appeal from the Circuit Court for Giles County**
**No. 12124    Robert L. Jones, Judge**

**No. M2006-00441-CCA-R3-CD - Filed February22, 2007**

The Defendant, Kenneth Workman, pled guilty in the Giles County Circuit Court to aggravated burglary, Class D felony theft, and Class D felony vandalism. Following a sentencing hearing, the trial court imposed an effective four-year sentence to be served in the Department of Correction and ordered restitution in the amount of $5000.00. In this appeal as of right, the Defendant argues that the amount of restitution is excessive. After a review of the record, restitution is reduced from $5000.00 to $2750.00. Otherwise, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**
**as Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Bob Stovall, Assistant Public Defender, Pulaski, Tennessee, for the appellant, Kenneth Workman.

Robert L. Cooper, Jr., District Attorney General; Jennifer L. Bledsoe, Assistant Attorney General; Mike Bottoms, District Attorney General; and Patrick Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On or about January 30, 2005,[1] the Defendant broke into Rebel Ranch Stables, a horse barn and residence in Pulaski, and stole "a police scanner, remote and video tape to closed circuit TV, computer scanner, saddles, 4 brown bridles, 4 lead ropes, and 2 horses." According to the presentence report, "[s]creens in the barn were cut, a door was kicked in, two air conditioners were

---

[1]Testimony at the sentencing hearing indicates that the burglary occurred on January 29th. However, the indictment and presentence report reflect that the burglary occurred on January 30th.

ripped out of the windows in an attempt to gain entrance to the apartment, and windows were broken." The Defendant, a former employee of Rebel Ranch, initially denied any involvement in the crime but later gave a confession to authorities.

A Giles County grand jury indicted the Defendant on June 15, 2005, charging him with aggravated burglary, a Class C felony; theft of property valued between $1000 and $10,000, a Class D felony; and vandalism valued between $1000.00 and $10,000.00, a Class D felony. See Tenn. Code Ann. §§ 39-14-103, -105, -403, -408. On December 5, 2005, the Defendant entered an "open" guilty plea to all three charges. Thereafter, on January 17, 2005, the trial court conducted an evidentiary hearing to determine the appropriate sentence to impose and the appropriate amount of restitution to award to the victim, Jim Ball, the owner of Rebel Ranch.[2]

Mr. Ball testified that he used the apartment in the barn as his secondary residence. Mr. Ball stated that he had owned the barn for two years, that the barn contained thirty stalls, and that, in January of 2005, he "probably" used eight of the stalls.

According to Mr. Ball, Ms. Susan Parker boarded three horses at the barn and paid him $300.00 a month per horse to do so. The contract between Mr. Ball and Ms. Parker "was on a month to month basis." One of the stolen horses belonged to Ms. Parker. Mr. Ball testified that, after Ms. Parker was informed of the burglary, she removed her two remaining horses from the barn. Mr. Ball stated that Ms. Parker's horses had been boarded at the barn for "over three months" before the burglary and that he had not had a "paying customer" since the burglary.

The two horses taken during the burglary were recovered in Lewis County on March 7, 2005. According to Mr. Ball, the horses had "lost a little weight, and one of them had been cut up a little bit, as far as maybe barbed wire, or whatever." Mr. Ball also testified about damages caused to the barn, items inside the barn, and a four-wheeler on the property. Mr. Ball estimated that the value of the saddle not recovered was approximately $500.00.

Mrs. Ball testified regarding the estimate of loss she prepared for the court and which was attached to the victim impact statement. She first testified to "monies spent to recover stolen property taken from Rebel Ranch Stables 01/30/2005 by Kenneth Ray Workman." Mrs. Ball stated that they advertised in two newspapers—the Giles Citizen/Free Press for $161.23 and the Ardmore Shopper for $50.00—"for a reward to be paid for recovery of [the] items taken and the horses." She also stated that they used a company named American Research and Recovery, at a cost of $100.00, "to try to locate information about phone information; anything that had come into the barn." She testified that they distributed reward posters in Tennessee, Alabama, and Kentucky, spending $5.36 on copy paper, $117.45 on "toner cartridges," and $274.24 in fuel. These recovery expenses totaled $718.28.

---

[2]The victim's last name is spelled "Baugh" in the transcript of the sentencing hearing. However, the last name is spelled as "Ball" in the indictment, presentence report, victim impact statement, and judgment form.

Mrs. Ball also testified to the "lost income due to" the burglary—the $900.00 a month paid by Ms. Parker to board her three horses at the barn. Based upon the cancellation of the contract by Mrs. Parker following the burglary, Mrs. Ball requested $10,800.00—$900.00 for each of twelve months—in restitution.

Finally, Mrs. Ball testified regarding "repair monies" and the value of the items taken or damaged during the burglary. She listed the following losses: (1) $464.31 to replace a security alarm box; (2) $163.86 in computer repairs; (3) $500.00 in labor to repair windows and window screens, replace the door frame and the lock at the tack room, reinstall air conditioners, and replace the glass in a gun display case; (4) $4.99 for videotape taken from the closed circuit television; (5) $150.00 for a police scanner not recovered; (6) $175.00 for repairs to the four-wheeler; (7) $65.00 for glass for a window; (8) $100.00 to "redye" damaged saddles; (9) $450.00 for the saddle not recovered; (10) $160.00 for four bridles; (11) $32.00 for four lead ropes; and (12) $150.00 for a damaged "noveal headstall." The losses submitted for repair/replacement costs totaled $2415.16. The total amount requested by Mrs. Ball for recovery expenses, lost income, and repair/replacement costs was $13,933.44.

On cross-examination, Mrs. Ball acknowledged that the advertising expenses were not "done at the behest" of the Giles County Sheriff's Department. Mrs. Ball also admitted that Ms. Parker "was fencing property" of her own and that, eventually, they "were going to lose those horses anyway . . . ." She had "no idea" when this was going to occur.

The Defendant was thirty-three years old at the time of the sentencing hearing. He asserted that he committed the burglary because he was "on alcohol and Xanax" and because of "[t]he woman [he] was with." The Defendant asserted that he returned the money received during the sale of the stolen horses and stated that he would "pay everything." According to the Defendant, he had not made any payment to the Balls because he had not been given an amount.

He testified that he had a commercial driver's license and an offer of employment as a truck driver with J.B. Hunt. He stated that, if employed as a truck driver, he would earn about $800.00 a week and would be able to make restitution in the amount of "150, $200.00 a month, easy."

The Defendant's mother testified that she was disabled and that the Defendant was her sole means of support. She stated that he paid the house payment and the utilites.

Following the conclusion of proof, the trial court imposed a sentence of four years for the aggravated burglary conviction, three years for the theft conviction, and three years for the vandalism conviction. The sentences were to be served concurrently in the Department of Correction as a Range I, standard offender. The trial court also imposed restitution in the amount of $5000.00 reasoning as follows:

As was obvious from one of my questions, earlier, the Court had some reservation about allowing for an indefinite period of rent, and especially at the gross

amount, because in order to get the $300.00 per horse, they had to invest some time and maybe some feed, as part of producing that income.

And it's awfully speculative as to how long the lady would have kept them. We do know she moved them to a barn in Kentucky, when she left the [Ball] barn with the horses, because whatever she planned to do with them, she was not yet ready to board them, herself, here in Giles County.

The advertising probably, in and of itself, would not be an appropriate recovery, but think about this for a minute: They got there that morning of the thirtieth, and the horses were missing. It turned out that several had been released in the area. A stud horse was found a half a mile or so away, and the victim impact statement indicates that they drove the rural roads around here for the longest. They didn't know, for sure, that they had been taken away, instead of just released.

So they put in a lot of man hours and miles, looking for what had happened, trying to learn what they could.

The printing and driving and advertising and so on, of the reward posters to try to get the horses recovered were an appropriate investigative expense, from the Court's perspective. And it does not include any claim for the man or woman hours involved in doing all of that.

The $2,400.00 or so may have some overstatement in it. For example, printer cartridges might have still had some life left in them, even after printing a ream of paper, but again, there was a lot of man time lost in doing all of that work, producing and printing, and buying the advertising, and doing other things—well, I mean, not the advertising, determining values, getting the repairs made for the windows and the computer, the alarm system, and other things.

The Court believes that it's reasonable to assume that the woman might have kept the horses there for a while longer, except for the fact that they had been turned out and the place might not now be safe. Not because of the physical handicaps of the premises.

This building must have been pretty secure if somebody had to cut seven screens and pull two window air conditioners and kick doors off of the hinges or out or the facings, at least, and do all of those other kind of things, to try to gain access to various parts of [the] building, then it must have been pretty secure.

What was unsecure about it was the fact that [the Defendant] had worked there once and had acquired some information about it, and abused that situation to

the detriment not only of the [Balls], but also of those people doing business with the [Balls].

The Court concludes that three horses for another five months, at maybe 150 a month, would be about $2,250.00. And that with the 700-plus claim and the 2,400-plus claim would come to $5,350.00, without any man hours at all.

The Court is going to round that downward to an even $5,000.00. That will be the restitution amount ordered to by paid by the [D]efendant to Mr. Jim [Ball].

This appeal followed.

**Analysis**

As his sole issue on appeal, the Defendant contends that $5000.00 was an excessive amount of restitution. Specifically, the Defendant argues that the trial court erred by awarding as part of the restitution $700.00 in advertising expenses spent to recover the stolen property and $2250.00 for lost rental income. He contends that these amounts were nonincludable because advertising expenses are general damages and that the lost horse boarding rentals are "speculative at best." Instead, he argues that the trial court should have imposed restitution in the amount of $2400.00—the cost of the property actually stolen or damaged by the Defendant.

When a defendant challenges the validity and amount of restitution, this Court must conduct a de novo review of both the amount of restitution ordered and the method by which it was determined. State v. Johnson, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997) (citing Tenn. Code Ann. § 40-35-401(d) (1990)); State v. Frank Stewart, No. 01-C-019007CC00161, 1991 WL 8520, at *1 (Tenn. Crim. App., Nashville, Jan. 31, 1991)). The trial court is entitled to a presumption of correctness. Johnson, 968 S.W.2d at 884 (citing Tenn. Code Ann. § 40-35-401(d)).

A trial court, in conjunction with a sentence of total confinement, may order a defendant to make restitution to the victims of an offense. See id. § 40-35-104(c)(2). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." Johnson, 968 S.W.2d at 885. The standards set forth in Tennessee Code Annotated section 40-35-304, which govern restitution in conjunction with probation, are applicable to restitution issues in cases involving total confinement. Tenn. Code Ann. § 40-35-304(g). The statute indicates that the amount of restitution should be based on a victim's pecuniary loss. See id. at (b). "Pecuniary loss" is defined as follows:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

-5-

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Id. at (e).

Special damages are those which are "'the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence.'" State v. Lewis, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995) (quoting Black's Law Dictionary 392 (6th ed. 1990)). General damages are those which are "'the necessary and immediate consequence of the wrong.'" Id. (quoting Webster's New International Dictionary 664 (2d ed. 1957)). It is unnecessary for the sentencing court to determine restitution in accordance with the strict rules of damages applied in civil cases. Johnson, 968 S.W.2d at 887.

The sum of restitution ordered must be reasonable and does not have to equal the precise pecuniary loss. State v. Smith, 898 S .W.2d 742, 747 (Tenn. Crim. App. 1994). There is no set formula. Johnson, 968 S.W.2d at 886. The sentencing court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay. Tenn. Code Ann. § 40-35-304(d); State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). In ordering restitution, the trial court shall specify the amount of time and payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. Id. at (g)(2). If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution. Id. at (f). Further, any unpaid portion of the restitution may be converted to a civil judgment. Id. at (h)(1); Bottoms, 87 S.W.3d at 108.

Although not specifically stated as an issue, the Defendant states in his brief that the Balls did not support their claim of restitution with any documentation. The trial court found the Balls' testimony reliable, and the evidence does not preponderate otherwise. In addition, the Defendant had the opportunity to rebut this testimony and questioned the Balls about the work done and the value of particular items. The Balls' testimony at the sentencing hearing, combined with the more specific list of pecuniary loss provided in the victim impact statement, was sufficient to establish the amount of pecuniary loss.

In this case, the amount of pecuniary loss suffered by the Balls was $2400.00 in repair/replacement costs and $700.00 expended for advertising. The Defendant does not challenge the $2400.00 award of repair/replacement costs but contends that the $700.00 award was improper because the advertising was not done at the behest of law enforcement. We disagree. The trial court correctly concluded that the amount spent by the Balls to secure the safe return of the stolen property was properly included in the restitution award. Tennessee Code Annotated section 40-35-304(e)(2)

does not require that a victim's cooperation in the investigation be at the behest and/or instruction of law enforcement, only that the expenses be reasonable. See id. Also, the trial court was aware of the Defendant's financial resources and considered same. Restitution for the repair/replacement costs and advertising expenses is proper.

Under the statute, the Balls are entitled only to special damages—that is, those that are actually a result of the crime and those which follow as "a natural and proximate" consequence thereof. In our view, the proof presented at the hearing was too speculative to support the $2250.00 award for lost rental income based upon the month-to-month boarding contract with Ms. Parker. See generally State v. Jesse Lee Creasman, No. E2004-00800-CCA-R3-CD, 2005 WL 946753 (Tenn. Crim. App., Knoxville, Apr. 25, 2005) (in burglary of business case, proof was too speculative to support restitution award of increased insurance premiums).

Mr. Ball testified that the $300.00 monthly fee included grooming, feeding and watering, putting shoes on the horse, contacting the vet if needed, and electricity for the stalls. He averred that the feed for the horses was provided by both Ms. Parker and himself. Mr. Ball stated that the horses were groomed daily and that it took approximately thirty to thirty-five minutes to groom a horse. The trial court factored in the expenses of the Balls in boarding a horse and awarded $150.00 a month per horse for a period of five months. However, there was no detailed proof by the Balls regarding the precise costs of boarding a horse, and there was no evidence proffered concerning their efforts to obtain new clients following the burglary. The trial court did not sufficiently explain how it arrived at $150.00 as the costs expended by the Balls in boarding a horse and why the award was for a five-month period. In fact, Mr. Ball testified that his profit was "probably a hundred a month . . . per horse" rather than $150.00 as determine by the trial court.

Ms. Parker had boarded her horses with the Balls for only three months prior to the burglary. Moreover, Ms. Parker had boarded her horses at the Rebel Ranch on a prior occasion and removed her horses after only six or seven weeks. The contract was on a month-to-month basis, and Ms. Parker could terminate the contract for any reason. There was testimony that Ms. Parker was fencing in her own property and intended to move her horses there at some point; however, it was unknown when this would occur.

We conclude that the lost rental income has not been sufficiently established by the proof as a "natural and proximate" result of this burglary. The restitution award is reduced by $2250.00.

**CONCLUSION**

The judgment is modified to reduce the amount of restitution from $5000.00 to $2750.00. Otherwise, the judgments of the Giles County Circuit Court are affirmed.

_____
DAVID H. WELLES, JUDGE

-7-