# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 25, 2012

## STATE OF TENNESSEE v. JOHN TYLER GILLEY

**Appeal from the Circuit Court for Anderson County**
**No. B0C00059     Donald R. Elledge, Judge**

---

**No. E2011-01627-CCA-R3-CD - Filed September 25, 2012**

---

In May 2010, the Defendant, John Tyler Gilley, pled guilty to aggravated burglary; as a condition of his plea, he was placed on probation for four years and agreed to pay restitution, with the amount of restitution to be determined at a later date. Following a hearing, the trial court ordered restitution in the amount of $3,240, with the Defendant to make installment payments of $90 a month. The Defendant appeals, arguing that the trial court's imposed restitution was excessive. The Defendant also asserts that the restitution award reflected on the judgment, $9,370 (the victims' pecuniary loss), is incorrect and contrary to law, requiring him to pay beyond the expiration of his sentence. After reviewing the record, we affirm the restitution amount but remand the case for correction of the judgment to reflect the proper award of $3,240.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

J. Thomas Marshall, Jr., District Public Defender; and Katherine J. Kroeger, Assistant Public Defender, for the appellant, John Tyler Gilley.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; David S. Clark, District Attorney General; and Sandra N.C. Donaghy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

No recitation of the facts underlying the offense is apparent from the record. The record on appeal does not contain a copy of the indictment or plea agreement or a transcript of the plea submission hearing. The judgment indicates that the Petitioner entered his guilty plea to aggravated burglary in this case on May 17, 2010. We also glean from the record that on this same date, the Petitioner entered a plea in cases A9CR0737[1] and A9CR0738. All sentences were to be served concurrently, for an effective four-year sentence. It further appears that as part of the agreement, the Defendant was ordered to pay restitution in the amount of $250 to the victim in case A9CR0737. The Defendant also agreed to pay restitution in the present case, with the parties agreeing that the amount of restitution would be set at a later date.

At the outset of the February 25, 2011 restitution hearing, the parties stipulated that the victims' total loss was $9,370—$9,270 owed to Sandra Lewis and $100 to Smoky Mountain Pawn Shop. The Defendant apparently stole jewelry and other items from Ms. Lewis and then pawned some of that jewelry to Smoky Mountain Pawn Shop for $100. Ms. Lewis maintained insurance on all of the items except the jewelry. She had to pay her insurance company a $1,000 deductible to receive compensation for the covered items and $8,270 was the value of the jewelry for which Ms. Lewis was not insured.

First to testify was the Defendant's mother, Kyra Gilley. She testified that her twenty-year-old son resided with her. According to the Defendant's mother, the Defendant was in Special Education throughout his schooling, and after "finishing out" his senior year "in a Christian school," he obtained his general equivalency diploma ("G.E.D."). Ms. Gilley explained that the Defendant's learning disability was "in reading and in comprehension. . . . [The Defendant] is very good with his hands but when it comes to comprehending as in money exchange or . . . reading and comprehending what he's read, that's very hard for him." According to Ms. Gilley, the Defendant read at a sixth grade level. She opined that his difficulty with exchanging money would hinder his ability to work a cash register.

Ms. Gilley acknowledged that her son did not currently have a permanent job. She was also aware that he was on probation and had certain financial obligations pertaining thereto. When asked how the Defendant got money to pay his obligations, Ms. Gilley responded,

[The Defendant] has been very good in wanting to pay those obligations, and he does in the summer have a couple of neighbors that he does their lawnmowing and he helped their elderly and he helps them . . . with yard work.

---

[1] At the restitution hearing, the assistant district attorney general stated that this conviction was also for aggravated burglary.

And they pay him for that. He has to do things around our house to earn money to make sure he pays his fines on time.

Ms. Gilley relayed that the Defendant paid monthly fees of $25 to the Anderson County General Sessions Court, $25 on a fine to the City of Oak Ridge, a probation fee, and restitution as ordered in the other case.

She claimed that the Defendant "want[ed] to work" and that they looked in the paper and on the internet for jobs. According to Ms. Gilley, the Defendant submitted applications, but his felony record interfered with him getting interviews. Ms. Gilley had to help the Defendant fill out the applications. As of the date of the hearing, the Defendant had been unsuccessful in finding gainful employment. Ms. Gilley testified that the Defendant also helped with "side jobs" when they were available and that he possessed "good skills" in painting and remodeling, which he had learned from his father. These side jobs were in addition to mowing lawns.

Ms. Gilley testified that the Defendant had no transportation and that she or his father drove him to the probation office for his appointments and drove him to job interviews. According to Ms. Gilley, the Defendant "basically stay[ed] home." She also took the Defendant for a psychological evaluation ordered by the probation department. As a result of that evaluation, the Defendant was attending a "vocational rehabilitation program." According to Ms. Gilley, the Defendant was eligible for "state tuition to help him," and he was "in the process of getting things together" to go to welding school. He would not be able to start school until late in the year "as in the fall or winter," and it would take "over a year" to complete the program.

Ms. Gilley said that the Defendant did not having any money in savings or any assets. She and her husband had bought him a car, titled in her husband's name, for transportation to school and work, but the Defendant had not driven that vehicle in a year. She "hoped" he would be able to use it in the future.

On cross-examination, she admitted that the reason the Defendant was not driving was because his license had been revoked due to a January 2010 driving under the influence conviction. According to Ms. Gilley, the Defendant could currently get his license restored after he paid his outstanding fines."

When asked if the Defendant paid her rent, Ms. Gilley responded, "[The Defendant] has to earn his pay to live with us at his age and for the food he eats and for any money to pay his debts. He does pay his for it. We didn't get him out of jail. He served his time. He's

on his own." According to Ms. Gilley, the Defendant performed work "for [them] to give him money to pay his probation and his fines."

Ms. Gilley confirmed that the Defendant was once employed at Papa Murphy's pizza restaurant for a period of approximately three months in early 2010. He made minimum wage. According to Ms. Gilley, the Defendant left that job voluntarily when "they cut his hours back to one hour a day," and she and her husband were having to drive him there. This was the only "paycheck-getting type" of job the Defendant had ever maintained.

According to Ms. Gilley, at the time of this aggravated burglary, August 2009, the Defendant was living at home. The home the Defendant burglarized was in their neighborhood.

Next to testify was Jada Tice, the Defendant's probation officer. Ms. Tice relayed that the Defendant was "doing fine at this time with probation"; he reported and paid as directed and passed his most recent drug screen. According to Ms. Tice, the Defendant paid $10 per month in restitution on the other case, $15 per month for his probation fees, and $25 per month for his court costs.

Ms. Tice testified that she had the Defendant take a psychological evaluation—initially it was an alcohol and drug assessment, but at some point, "it turned more into a mental health." She confirmed that the Defendant did have "some difficulties" with reading. If she gave him specific instructions, usually in writing, the Defendant was compliant. According to Ms. Tice, the Defendant, as a part of his probation requirements, had been seeking employment. Ms. Tice opined the Defendant was "trying." She was aware that the Defendant currently had no income.

Ms. Tice was then asked about the $250 restitution award that was ordered in the other case. According to Ms. Tice, the Defendant was required to pay $10 a month in restitution on that case, and he began making monthly payments in August 2010. As of the date of the hearing, the Defendant had paid a total of $80 in restitution.

At the conclusion of the proof, the trial court determined that the total pecuniary loss to the victims was $9,370. After making additional factual findings, the trial court suspended the hearing and ordered the parties to the brief the issue and reset the case for a later date.

Following the submission of briefs by the parties, the trial court announced its decision on June 20, 2011. The trial court ordered restitution in the amount of $3,240, payable in installments of $90 per month for the remaining thirty-six months of his

probation.[2] An amended judgment was filed on June 30, 2011, reflecting a restitution award for the total amount of the victims' pecuniary loss, $9,370. This appeal followed.

## ANALYSIS

The Defendant argues that to fulfill the restitution award reflected in the judgment form, $9,370, payable in installments of $90 a month, would require payment beyond the expiration of his probationary period, which is contrary to law. The Defendant acknowledges that payment of the amount announced by the trial court on June 20, 2011, $3,240, would be satisfied within thirty-six months. The Defendant then submits that the trial court ordered excessive restitution, arguing that an order of $90 a month "is unreasonable under the circumstances and quite simply sets up an otherwise compliant probationer to fail." He points to the facts that he "only earned enough to meet the fifty dollar a month obligation imposed by the Board of Probation and Paroles" and that he "is trying to find employment but is disadvantaged by his felony convictions and learning disabilities." The Defendant requests that this court modify the restitution award "at an amount such that the monthly installments do not exceed ten dollars ($10.00) a month until the restitution of A9CR0737 is satisfied, at which time the installments could increase to twenty dollars ($20.00) a month."

When a defendant challenges the validity and amount of restitution, this court conducts a de novo review of both the amount of restitution ordered and the method by which it was determined. State v. Johnson, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997) (citing Tenn. Code Ann. § 40-35-401(d) (1990); State v. Frank Stewart, No. 01C01-9007-CC-00161, 1991 WL 8520, at *1 (Tenn. Crim. App. at Nashville, Jan. 31, 1991)). The trial court is entitled to a presumption of correctness on appeal. Tenn. Code Ann. § 40-35-401(d).

A trial court, in conjunction with a probated sentence, may order a defendant to make restitution to the victims of the offense. See Tenn. Code Ann. § 40-35-304(a). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." Johnson, 968 S.W.2d at 885. The statue that governs restitution as a condition of probation provides:

> (b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall

---

[2] The trial court apparently operated under the assumption that the Defendant had thirty-six months remaining on his four-year probationary sentence. However, it is not entirely clear from the record when the sentence was to expire.

order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.

(c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

(d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.

(e) For the purposes of this section, "pecuniary loss" means:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Tenn. Code Ann. § 40-35-304(b)-(e).

The restitution ordered must be reasonable and does not have to equal the victim's precise pecuniary loss. State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). There is generally no formula for awarding restitution, and the sentencing court need not determine restitution in accordance with the strict rules of damages applied in civil cases. Johnson, 968 S.W.2d at 886-87. The sentencing court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay. Tenn. Code Ann. § 40-35-304(d); State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). In ordering restitution, the trial court shall specify the amount of time for payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. Tenn. Code Ann. § 40-35-304(g)(2). If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution. Tenn. Code Ann. § 40-35-304(f). Further, any unpaid

portion of the restitution may be converted to a civil judgment. Tenn. Code Ann. § 40-35-304(h)(1); Bottoms, 87 S.W.3d at 108.

In setting the restitution award in this case, the trial court ruled as follows:

[T]he victim's total . . . pecuniary loss was nine thousand three hundred and seventy dollars. Defendant agrees that at least one thousand one hundred should be a part of his restitution order. That the diagnosis of learning disabilities and good with his hands, has remodeling skills, and can work any physical labor jobs. The [D]efendant had maintained a job at Papa Murphy's pizza until he voluntarily quit, that he could be a construction worker and remodeling specialist and could make large sums of money. He is a graduate that obtained his G.E.D. and that it is somewhat difficult to find a job.

The [c]ourt finds in the case law that has been submitted to me and the case law I researched that the [c]ourt is to make two different determinations. One is what is, in fact, the pecuniary loss and that's the amount that was lost and due to Ms. Sandra Lewis. I have already stated that, nine thousand three hundred and seventy dollars. Then the [c]ourt has to find what the [D]efendant can reasonably pay under the circumstances at this time. What was presented to me is the [D]efendant voluntarily quit, and he has no job at this time. . . .

I find that this gentleman if he worked at minimum wage, less than three hours per week, he will have the ability to pay at least ninety dollars per month on this case. Now that figures out to be thirty-two forty and that's not the total amount that he owes you. That is the total that I am ordering he has to pay based upon what was presented to me.

. . . What was submitted to me is that he is going to get additional training, should he obtain any type of job—I find that he is voluntarily unemployed and that is why I am setting the monthly payment that he should make in this cause of restitution. Ms. Lewis, you have at any time a right to petition the [c]ourt or otherwise adjust the payment. . . . It doesn't fully reimburse you. You have other alternatives to go to court and get that. If he works more than three hours a week, certainly this [c]ourt will consider a Petition to Modify.

We conclude that the Defendant's contention that the restitution award is excessive is without merit. The trial court made all of the required statutory findings, considering not only the victims' loss but the financial resources and future ability of the Defendant to pay.

The trial court took into account the facts that the Defendant was not currently employed and suffered from disabilities, but nonetheless, found that he was "voluntarily" unemployed and could obtain employment. Considering the Defendant's future ability to pay, the court found that if the Defendant worked a minimum wage job for three hours per week he could pay the $90 a month as ordered. The amount of restitution, $3,240, was reasonable.

However, we agree with the Defendant that the judgment form reflects an improper amount of restitution, $9,370. The Defendant correctly states that payment of this amount would extend beyond the expiration of his probationary sentence. While this amount was found to be the total pecuniary loss to the victims, it was not the amount of the restitution award. The case is remanded for correction of the judgment form to reflect restitution in the amount of $3,240, payable in monthly installments of $90.

<u>CONCLUSION</u>

In consideration of the foregoing and the record as a whole, the restitution award of $3,240 is affirmed. The case is remanded for correction of the judgment form in accordance with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE