IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2013

## STATE OF TENNESSEE v. DANNY WAYNE CARPENTER

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 12CR023     John F. Dugger, Jr., Judge**

———————————

**No. E2013-00747-CCA-R3-CD - Filed April 30, 2014**

———————————

After the appellant, Danny Wayne Carpenter, pled guilty in the Hamblen County Criminal Court to aggravated burglary and theft of property worth more than $10,000, the trial court imposed a total effective sentence of three years in the Tennessee Department of Correction and ordered the appellant to pay restitution in the amount of $15,250.  On appeal, the appellant challenges the amount of restitution imposed by the trial court.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

D. Clifton Barnes, Morristown, Tennessee, for the appellant, Danny Wayne Carpenter.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; C. Berkeley Bell, District Attorney General; and Kim Morrison, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I.  Factual Background

A Hamblen County Grand Jury returned an indictment charging the appellant with aggravated burglary and theft of property worth more than $10,000.  Thereafter, the appellant and the State entered into a plea agreement that provided that the appellant would plead guilty to the charged offenses, Class C felonies, in exchange for concurrent Range I sentences of three years for each offense, with release eligibility after service of thirty percent

of the sentences. The plea agreement further provided that the appellant would pay $15,250 in restitution.

At the guilty plea hearing, defense counsel informed the trial court that the appellant was willing to enter a guilty plea but that "a restitution hearing" needed to be held. The court noted that the plea agreement provided for restitution of $15,250 and that "everybody signed off on it." Defense counsel stated, "Yes, Your Honor. We don't agree with that. There's still a dispute." Counsel explained that the State contended the amount taken from the victim was $30,500. The appellant disagreed with that amount and claimed that the amount taken was $12,000.

The trial court then asked the appellant if he understood the rights he was waiving by entering the guilty plea and if his judgment was impaired in any way. The appellant stated that he was not impaired and that he understood his rights. The appellant acknowledged that he read the plea agreement, that he understood it, and that he signed it. The court accepted the guilty plea and proceeded to have a hearing on the amount of restitution to be imposed.[1]

The appellant's co-defendant, Christopher D. Seals, testified, acknowledging that the State's version of the events underlying the guilty plea was as follows:

> [O]n 11/6/11 at 7:30[,] the [appellant and his co-defendant, Seals,] went to the residence of Kenneth Hayes located at 625 Rosedale Avenue. Once there, [Seals] made contact with the victim. The [appellant] waited in the vehicle. Mr. Seals then got the victim to leave his residence and go to his workshop located behind his residence. At that time [the appellant] exited the truck and busted out the rear door glass at the residence and gained entry. Once inside the residence, he took the safe and – he being [the appellant] – and its contents including miscellaneous paperwork, the vehicle titles and $30,000 in cash. He then went back to the truck and waited on Christopher Seals to return to the truck and they then left and went to another location where they forced open the safe and got its contents.

Seals agreed with the State's version of events, disputing only the amount taken from the victim.

---

[1]The trial court held a joint hearing to determine the amount of restitution the appellant and a co-defendant, Christopher Seals, would pay.

Seals said that on the day of the offense, the victim worked on two chainsaws for him. While the victim was in his workshop repairing the chainsaws, the appellant went into the victim's house to get into the victim's safe. Seals said that the appellant knew the victim had a safe because the victim was the appellant's uncle.

Seals said that he was "high" on pills at the time of the offense, namely Roxicodone and Xanax. He acknowledged that he did not "recall every single thing" that was in the safe.

The court asked Seals how much money was in the victim's safe. Seals responded that the safe contained no more than $12,000, that he and the appellant "split" the money, and that he received $4,500. The court stated, "You split it? Well, $4,500 twice is $9,000. You just said there was $12,000. So something is not matching up. I can add a little bit. . . . His half was 4,500." Seals replied, "All right. We'll say $6,000. I know there was no more than $12,000 in the safe and we split the safe." The court asked if anything else was in the safe, such as jewelry, guns, or coins. Seals said that the safe contained only the money and some papers.

Kenneth Clifford Hayes, the seventy-year-old victim, testified that his wife passed away approximately five years before the offense. Inside the safe was money his wife had obtained from her 401(k) and from a legal settlement. The victim said that he had not taken money from the safe since his wife's death. He was unable to recall the specific amount of his wife's 401(k) or the legal settlement. However, he stated, "They was over $30,000 in there counting all the old money and everything that she had put in there." He explained that the safe contained 254 two-dollar bills, some silver dollars, and his wife's "scholarship ring." The victim said that after his wife passed away, he and the appellant were putting "insurance papers" in the safe and that the appellant "stuck his hands on in there and said, I've never seen this much money." The victim quickly shut the safe.

The victim said that he replaced the broken window himself and that the repairs cost approximately $10.

On cross-examination, the victim acknowledged that he never counted the money and that he was relying on his wife's word about how much money was in the safe. The victim stated, "I was with her 37 years. I should take her word." He said that "she counted it just before she died. I had set it on the table, on the big old table and she counted the money."

The trial court asked the victim if he ever counted the money in the safe. The victim said no, again explaining that his wife said there was $30,000 or $35,000. Defense counsel objected to that statement on hearsay grounds. The trial court responded, "Well, I'm going

to weigh it with what he [is] saying. But I'm trying to figure out how he knew how much – what was in there."

The victim acknowledged that in the past four or five years, he had purchased a used automobile for $14,000. He said that his godfather, Johnny Sexton, paid $10,000, and the victim paid the remaining $4,000. The victim said that the $4,000 did not come from the safe. He could not estimate the value of the coins that were in the safe.

The victim stated that the theft "has about wrecked my life and my wife dying and them stealing my safe and everything, it's about ruined me." He said that the offense "has about wrecked my health" and that

> [M]y mind is about gone for the last – they have run me from Sneedville to Morristown to have the trial and everything.
>
> . . . .
>
> My nerves and everything. I can't sleep at night. Every time I shut my eyes, I see that boy's eyes right there [indicating Seals]. I looked down on him when he was – when I was working on one of his chainsaws. And they was not nothing wrong with the chainsaws when he got me away from my house. And he grabbed up the chainsaws and run. . . .

The victim said that regardless of whether the appellant paid restitution, he thought the appellant and Seals should be punished and sent to jail.

Georgina Rines, the appellant's sister and the victim's grandniece, testified that before the offense, she helped the victim take care of his finances. The victim received a social security payment of $901 per month. The victim had a safe in his house; the key to the safe was kept on a ring that was hung on the wall behind the mantle. A couple of months after the death of the victim's wife, she and the victim put his wife's credit cards and driver's license into the safe. She saw that there was a lot of money in the safe and that the victim's wife had "paper clips with little pieces of paper that had the amounts on it." She said that she did not see the amounts.

Rines said that the victim called her after he realized the safe was gone. He showed her a paper reflecting that his wife had received $17,000 from a legal settlement. Rines said that the victim had a checking account in which he kept around $1,000. She did not know how the victim paid for his car.

On cross-examination, Rines clarified that the victim's wife obtained $17,000 from the settlement but that she did not know how much money was in the wife's retirement account.

The appellant testified that he made a statement after he was arrested for breaking into the victim's house, acknowledging that he took $12,000 from the safe. He said that he did not see any coins in the safe but that he did see a number of $2 bills. He and the appellant evenly divided the money; the appellant's half was exactly $6,000. They spent $2,500 of the money on drugs.

On cross-examination, the appellant said that after he took the safe, he and Seals drove to a boat ramp near a bridge in Grainger County, removed the safe from the car, and "busted the safe" open.

Regarding restitution, the trial court said that Seals's testimony concerning the amount of money in the safe was not credible. In support of its finding, the court noted that Seals initially stated that his half of the money was $4,500; thereafter, he said, "[L]et's say it's 12." The trial court noted that the appellant, who was in the courtroom at the time, heard the testimony and asserted that the safe held exactly $12,000. The court further noted that the appellant and Seals admitted taking drugs the day of the offense and could not recall what happened to the coins, $2 bills, and ring that were in the safe. The court accredited the victim's testimony regarding the amount of money in the safe, stating that the victim's wife had counted the money and said it totaled $30,000. Additionally, the victim's niece saw the "money in stacks with paper clips and amounts [on] it." The court found, "You can't believe the [appellant or Seals] as to what was in there. It's more – it's more the weight should go to what the victim says was in there." The court stated that it was "outrageous" that the appellant and Seals victimized an elderly man, who was the appellant's "blood relative," to obtain money for drugs. The court said:

> The plea paperwork for [the appellant] had an amount on it that was agreed to by the State[, which was $15,250,] and that's going to be the – and that was signed – and that's going to be the amount that they should pay. Because [the appellant and Seals were] just like, Well, let's just say it's 12. That doesn't sound like anybody that said we counted it and divided it and it was 12. Not to me. . . . Mr. Hayes is more – a lot more reliable than anything that's come out of these two guys. And he's the victim. And it's affected him, clearly, by his testimony.

The court determined that the appellant should pay $15,250 in restitution. However, he cautioned the victim, "[D]on't go spending that money and count on that. . . . There's a lot of people owe a lot of restitution and it's like getting blood out of turnips."

On appeal, the appellant challenges the amount of restitution imposed by the trial court.

## II. Analysis

Initially, the State contends that the appellant "agreed to [the] amount of restitution as part of a fully-negotiated plea agreement and thus has no appeal as of right from his sentence." We note that, generally, a defendant may not appeal from the terms of a negotiated guilty plea without properly reserving a certified question of law. See Tenn. R. App. P. 3(b)(2); Tenn. R. Crim. P. 37(b)(2). In the instant case, the appellant's written plea agreement provided that he would pay $15,250 in restitution. However, at the guilty plea hearing, the appellant announced that he was agreeing to plead guilty but that he did not agree to the amount of restitution. The trial court did not reject the entire plea agreement but held a hearing to determine the amount of restitution. Accordingly, we conclude that the appellant is not precluded from appealing the trial court's imposition of restitution.

Generally, the amount of restitution that the defendant may be directed to pay is limited to "the victim's pecuniary loss." See Tenn. Code Ann. § 40-35-304(b). Further, "[a] victim seeking restitution must present sufficient evidence so the trial court can make a reasonable determination as to the amount of the victim's loss." State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). This court has held that "the appropriate standard of review for restitution orders is the abuse of discretion standard with a presumption of reasonableness." State v. David Allan Bohanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. at Nashville, Oct. 25, 2013) (citing State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012) and State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012)).

The appellant contends that "there was no admissible evidence presented at the hearing . . . as to the amount of money in the safe." Specifically, he complains that he and Seals maintained that there was $12,000 in the safe and that the victim's testimony about the amount of money in the safe was based upon "a statement by his deceased wife to him a couple of years before her death which was almost five years preceding the hearing of this matter." We note that Tennessee Code Annotated section 40-35-209(b) provides that in a sentencing hearing, reliable hearsay is admissible as long as a defendant "is accorded a fair opportunity to rebut any hearsay evidence so admitted." In the instant case, the trial court found that the appellant and Seals were not credible about the amount of money taken, noting that they were "high" at the time of the offense. The court further noted that the appellant

-6-

and Seals gave conflicting accounts regarding the amount, indicating that they probably did not know how much money was taken. Additionally, we note that Rines testified that there was a lot of money in the safe and that the victim's wife had "paper clips with little pieces of paper that had the amounts on it." Rines also saw a paper reflecting that the victim's wife had received $17,000 from a legal settlement. The trial court essentially found that the victim's testimony regarding the amount of money in the safe was reliable hearsay. We agree.

Finally, the appellant asserts that the trial court failed to consider his ability to pay in determining the amount of restitution imposed. However, the appellant did not raise this issue in the trial court. Therefore, he has waived the issue. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Accordingly, we conclude that the trial court did not abuse its discretion in imposing restitution in the amount of $15,250.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE